**In re Nathan FELDMAN, Debtor.**

**Bankruptcy No. 84 B 11085 (PBA).**

United States Bankruptcy Court, S.D. New York.

Sept. 26, 1985.

Harris & Zeichner, New York City, for Lauro Deutsch and Joseph Shubin.

Garrity, Connolly, Lewis, Lowry & Grimes, New York City, for debtor.

MEMORANDUM DECISION AND ORDER DISAPPROVING PROPOSED DISCLOSURE STATEMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

On July 27, 1984, Nathan Feldman ("Feldman" or "Debtor") filed a petition for reorganization under Chapter 11. Odd Couple Restaurant Corp. d/b/a Gefens Kosher Dairy Restaurant ("Odd Couple"), a corporation of which Feldman is president, filed a Chapter 11 petition on the same day. Odd Couple operates a kosher dairy restaurant in the garment district in New York City. Feldman owns 100% of the stock of Odd Couple. His Odd Couple stock is being held under a purchase escrow agreement dated May 11, 1983 to secure an indebtedness to Lauro Deutsch ("Deutsch") in the present amount of about $45,000 according to the Debtor's schedules filed August 15, 1984. The Debtor's schedules also state that Feldman is the owner of 80% of the stock of Odd Couple Restaurant of Broadway Corp. ("Dairy Planet"), which operates a kosher dairy restaurant in the financial district of New York City. The amount of Feldman's stock ownership in Dairy Planet is in dispute. Deutsch has asserted that Feldman is not a stockholder of Dairy Planet and that Deutsch and one Anthony Naydich each own 50% of the stock.

On December 28, 1984, Deutsch and Joseph Shubin ("Shubin") as assignee of Situation Ventures Corp. ("Situation") and holding as agent for Lauro Deutsch filed a plan of reorganization in this case. Thereafter, and on February 13, 1985, Deutsch and Shubin filed an amended plan (the "Deutsch/Shubin Plan") and also filed a disclosure statement. Both the U.S. Trustee and the Debtor filed objections to the disclosure statement. A modified disclosure statement making a number of enlargements and changes was filed on July 25, 1985. Settlement discussions between Deutsch and Feldman not having reached a conclusion satisfactory to Deutsch, Deutsch has requested that the court approve the modified disclosure statement filed on July 25, 1985 so that solicitation of acceptances can occur and a confirmation hearing can be held. Feldman has objected to the modified disclosure statement. At this stage, the court is concerned only with whether the proposed modified disclosure statement contains "adequate information" within the meaning of Code § 1125. For

the reasons which follow, the court finds that the modified disclosure statement does not contain adequate information and the court therefore disapproves the disclosure statement.

This case is unique in having a non-debtor plan proponent in an individual Chapter 11 case. The Deutsch/Shubin Plan divides claims into five classes. Class 1, administration claims, are to be paid in full on the date of confirmation. Class 2, tax claims, are to be paid in full in cash, either on confirmation or under such terms as are permitted by Code § 1129(a)(9)(C). Class 3, which consists of all unsecured claims other than those of Deutsch and Shubin are to be "paid 100% of his legitimate claim on confirmation." [1] Classes 1–3 are stated to be not impaired classes.

There are two impaired classes, Classes 4 and 5. Class 4 consists of the claims of Deutsch and Shubin, as assignee of Ventures and holdings as agent for Deutsch. The plan provides

"The claim of Lauro Deutsch is secured by the Debtor's stock in Odd Couple * *. Lauro Deutsch shall receive all of the assets of the Debtor, with the exception of exempt property claimable under applicable law. The assets received by Deutsch will include, among other things, all the outstanding shares in the Odd Couple * * * owned by the Debtor and any interest the Debtor may have in the Odd Couple Restaurant of Broadway ('Dairy Planet')." [2] Plan at Article 4.

The Debtor position of Feldman is classified as Class 5. The plan provides that

"All Feldman assets will be surrendered to Deutsch with the exception of exempt property claimable under applicable law."

The plan is to be funded by assets provided by Deutsch. In plain English, if the Deutsch-Shubin plan were confirmed, Deutsch would end up with all of the stock of Odd Couple and any interest of Feldman in Dairy Planet and thereby own both restaurants. Feldman would end up owning no interest in either restaurant.

Feldman has objected to approval of the disclosure statement on a number of grounds, ranging from incomplete, inadequate and inaccurate information to the failure of Shubin to sign the plan or disclosure statement. The core of the objections center around the lack of disclosures about the nature of the disputes existing between Feldman and Deutsch and about the value of Dairy Planet, the restaurant now operated exclusively by Deutsch. Feldman also points to the lack of quantification of the amount of claims to be paid, the lack of full disclosure about Shubin's relationship with Deutsch and his employment by the Internal Revenue Service, a major creditor of Odd Couple, as well as the absence of any information about the amount or source of monies to be provided by Deutsch. Feldman also objects that the plan would effectively be one of involuntary servitude of the Debtor if it in any respect

"unilaterally requires Feldman * * * in any way to be liable for any portion of the debt to be satisfied under its Proposed Plan."

█ If the plan's conclusions that Classes 1–3 are unimpaired are correct, no disclosure statement is required for these classes since a disclosure statement is required only for the purpose of soliciting an acceptance or rejection of the plan. See Bankruptcy Code § 1125(b). Thus, the ade-

---

1.  The court is unclear what, if any, significance should be given to the phrase "legitimate claim." The term "Allowed claim" is defined elsewhere in the plan. A clarifying amendment to the plan appears required.

2.  There is a drafting imprecision in this provision of the plan. It is unclear to the court whether the "claim of Lauro Deutsch" referred to in the first line just quoted in the text refers only to Deutsch's original claim or whether it was also intended to refer the claim held by

Shubin as well. Nor does this seem to be a distinction without a difference as the plan was signed by Deutsch twice: once in his name alone and once "as *principal recipient* of the assignment of the claim by Situation Ventures Corp." (emphasis added). This highlights the correctness of Feldman's point that Shubin should be required to sign both the plan and disclosure statement if he is truly a plan proponent.

quacy of the content of the disclosure statement need not be viewed from the point of view of those classes. Nor need it be reviewed as to adequacy as it relates to Class 5, as the plan proponent can hardly complain of the adequacy of its own disclosure statement. Thus, the disclosure statement is addressed solely to Feldman, himself, as the only other impaired class. This was expressly recognized in the affidavit of Nathan Schwed sworn to March 29, 1985, ("Schwed Affidavit") and filed on behalf of Deutsch/Shubin in response to the original objections to the disclosure statement.

■ This court has concluded that the proposed disclosure statement does not provide information of a kind, and in sufficient detail, to enable Feldman to make an informed judgment about the plan. It does not provide information sufficient to enable a "hypothetical reasonable investor" typical of Feldman's class to make an informed judgment about voting because it contains insufficient information to evaluate key issues such as (a) how Deutsch intends to make the payments called for by the plan and how and on what conditions he will be obtaining the funds; the bare statement included as to Deutsch's net worth is inadequate is it is impossible to how it was calculated, e.g., does it include and for how much, Dairy Planet; this issue is of considerable importance if tax claims are to be spread out over six years from assessment and Feldman has any residual personal liability; (b) the finances, including income and assets, and other information necessary to value Dairy Planet and its stock, which information essential to determining the value, if any, of the Debtor's stock interest, if any, which is being transferred to Deutsch under the plan; (c) the intended result or impact of having Deutsch and Shubin take over pending litigation involving Dairy Planet to which Feldman is now a party; (d) information about the dollar amounts involved the litigations between Deutsch and Feldman to the extent they are not within the scope of Feldman's knowledge; and (e) an evaluation of the legal effect of confirmation of the plan on Feldman's post-confirmation liabilities, tax and otherwise. Although the modified dis-

closure statement is a more informative statement than the original disclosure statement, it still is not informative enough, given the radical nature of the plan concept. It is simply not a sufficient answer to Feldman's objections for Deutsch/Shubin to take the attitude, as they did in the Schwed Affidavit:

"21. Since the Plan does not provide for any payment to the Debtor, he has no need to know the source of the funds to be used in making payments under the Plan. In any event, since Feldman has already used the assistance of two thugs to threaten Mr. Nadich, Deutsch's partner in the Dairy Planet, Deutsch is hesitant to reveal the name of any person who may be assisting him in implementing the Plan. Moreover, since the Plan provides no payment to the Debtor, the source of funds is of no concern to the Debtor who is the only party voting on the Plan."

The provisions of Code § 1141(d)(2) and (3) which restrict the discharge of an individual Chapter 11 debtor give the debtor a real and vital interest in the terms of payment to creditors whose claims may not be discharged. For example, if Deutsch/Shubin pay 100% on confirmation to unsecured creditors without priority, in order presumably to avoid having them become a voting class, Deutsch/Shubin may have insufficient funds to pay the priority claims and resort to the stretch-out permitted by Code § 1129(a)(9)(C). In that event, Feldman may have a post-petition exposure for the taxes. Further, the requirement that Feldman turn over all assets, without identification, seems to be an invitation to future litigation.

■ It should be clear, however, that in disapproving the disclosure statement the court is not holding that it is deficient because of any information not supplied by Feldman. The disclosure statement, being addressed to Feldman, need not contain information that Feldman has access to from his own sources, such as the legal pleadings and discovery in the litigations and as the finances of the Odd Couple restaurant which he personally operates.

Deutsch is, in effect, trying to cram down on Feldman a settlement of the pending disputes between the parties. While it may be that Feldman would reject any plan proposed by Deutsch/Shubin, that is of no importance to the approval or disapproval of the disclosure statement. What is important is that Feldman be given sufficient information that he can be expected to be able adequately to evaluate the plan and that following his vote, for or against, the court can proceed to consider whether the plan should be confirmed. It seems unlikely that this court could confirm any plan proposed by Deutsch/Shubin over Feldman's opposition without considering in detail the numbers, including the values of the two restaurants, as well as the issues in litigation between the parties so as to be able to conclude that the plan does not discriminate unfairly and that Deutsch is not receiving more than 100% of his claims. Perhaps the numbers do come out in Deutsch's favor. If so, it is not apparent to the court in the disclosure statement.

The modified disclosure statement filed July 25, 1985 is disapproved. It is so ordered.