In re JAMES B. DOWNING & COMPANY, Debtor.

In re Carol HOEKSTRA, Debtor.

OFFICIAL CREDITORS' COMMITTEE OF JAMES B. DOWNING & COMPANY, debtor and debtor in possession in Case No. 85 B 14986, Plaintiff,

v.

AGRI DAIRY PRODUCTS, INC.; Cereal By Products; Better Nutrients; Carol Hoekstra; and James H. Wooten, Jr., Trustee of the Estate of Carol Hoekstra, Defendants.

Bankruptcy Nos. 85 B 14986, 85 B 17220.
Adv. No. 86 A 305.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 12, 1987.

---

Stephen T. Bobo, Towbin & Zazove, Ltd., Chicago, Ill., for Official Creditors' Committee of James B. Downing & Co.

Nicholas F. Maniscalco, Chicago, Ill., for Cereal By Products and Better Nutrients.

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the Court on the motion of the plaintiff, the Official Creditors Committee (the "Committee") of James B. Downing & Company ("Downing") for summary judgment against the defendants Cereal-By-Products ("Cereal") and Better Nutrients ("Nutrients").

The basic facts are simple. Downing had a facility in Adell, Wisconsin which produced a standard grade of solid whey called Norwhey. On January 22, 1985 Downing and Nutrients entered into an agreement pursuant to which Nutrients purchased 3,000,000 pounds of Norwhey from Downing. Under the contract, which was to last from February 1, 1985 to February 1, 1986, Nutrients was to prepay for the whey on a quarterly basis and was to pick it up at a rate of about 250–300,000 pounds/month. Although the contract was amended from time to time[1] it remained unchanged in its essential terms, particularly the agreement by Nutrients to prepay for the whey to be picked up each month.

On November 4, 1985 Downing filed its Chapter 11 petition. At that time, Nutrients had prepaid for a substantial amount of whey. Nutrients does not seem to contest, and in fact admits in answers to interrogatories, that the amount of whey paid for by Nutrients as of November 4, 1985 exceeded the 400,000 pounds Nutrients received from Downing over a two month period after the petition was filed. All payments for this whey had occurred prepetition. Nutrients made no postpetition payments to Downing for any of the whey it received from Downing postpetition.

On August 23, 1985, Cereal purchased 495,000 pounds of Norwhey from Downing.

---

1. Amendments to the contract are indicated in the exhibits attached to the memorandum of Cereal and Nutrients in opposition to the Committee's Motion for Summary Judgment.

Cereal indicated that the whey was to be in 50 or 100 pound sacks or in bulk, and that the dates when the whey was to be shipped would be furnished later. On August 30, 1985, Cereal prepaid Downing $57,012.00 for the Norwhey to be supplied. Cereal picked up some 155,000 pounds of whey after Downing filed its Chapter 11 petition on November 4, 1985. Like Nutrients, Cereal has made no postpetition payments to Downing for any whey. The Committee has brought this adversary proceeding to recover the postpetition transfers of whey under 11 U.S.C. § 549 and is seeking summary judgment.

A motion for summary judgment is governed by Bankr.R. 7056 which incorporates Fed.R.Civ.P. 56. Rule 56(c) provides, in part, that summary judgment:

> [S]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affadivits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Therefore, if there is a genuine issue of material fact the Committee's motion for summary judgment must be denied. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Section 549(a) of the Bankruptcy Code, Title 11, states quite clearly that postpetition transfers of property of the estate are voidable if the transfers occur after the commencement of the bankruptcy case and are not authorized either under Title 11 or by the Court.[2] It is clear that Downing physically transferred property to the defendants Cereal and Nutrients after the commencement of this bankruptcy case and that this transfer was not authorized by the Bankruptcy Code or by this Court.

Therefore, the only issue this Court must address is whether the property in question was property of the estate at the time of the transfer. The answer to that question turns on who owned the whey at the time it was delivered to the possession of the defendants. If the whey was Downing's property, it was property of the estate pursuant to 11 U.S.C. § 541, and the transfer may be avoided. However, if the whey was not Downing's property, it never became property of the estate, and the transfers may not be set aside.

Bankruptcy Rule 6001 notwithstanding,[3] the burden of proving by a fair preponderance of the evidence at trial that the whey in question was property of the estate would lie with the Committee. The defendants are not asserting the validity of these transfers under 11 U.S.C. § 549. They do not claim that the transfers were authorized by this Court or by any provision of Title 11 such as 11 U.S.C. § 549(b) or (c). Instead they say that these transfers were wholly outside the scope of 11 U.S.C. § 549 because the property in question was not property of the estate. Specifically, they say no transfer ever took place because the debtor was a bailee and at the time of the petition, the whey was their property.

---

**2.** Section 549(a) of the Bankruptcy Code, Title 11, provides:

> (a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; or
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.

Neither 11 U.S.C. § 549(b) nor 11 U.S.C. § 549(c) have any conceivable application to these facts. Section 303(f) of the Bankruptcy Code, Title 11, is irrelevant because this case was not initiated by an involuntary petition. Section 542(c) of the Bankruptcy Code, Title 11, deals with postpetition transfers of property of the estate by third parties holding such property. It is meant to protect a bank which inadvertantly honors a debtor's prepetition check postpetition. *See Bank of Marin v. England*, 385 U.S. 99 [87 S.Ct. 274, 17 L.Ed.2d 197] (1966); H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It is not meant to apply to the situation where a defendant receives an avoidable transfer of property of the estate postpetition and retransfers that property to a third party. *Compare* 11 U.S.C. § 550. *See In re Newman*, 59 Bankr. [B.R.] 670, 673 (Bankr.W.D.Mo.1986); *In re O.P.M. Leasing Services, Inc.*, 35 Bankr. [B.R.] 854, 864 (Bankr.S.D.N.Y.1983).

**3.** Bankruptcy Rule 6001 provides; "[a]ny entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."

Therefore, when they picked up the whey postpetition, they were merely taking what was theirs. In light of this theory, it must be shown that the whey was property of the estate as of November 4, 1985, the date Downing filed its Chapter 11 petition.

Property of the estate includes "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Accordingly the Committee must prove that Downing had a legal or equitable interest in the whey before the burden shifts to Cereal and Nutrients to prove that any transfer of the whey was valid. Attached to the Committee's motion is the affidavit of Mr. Larry Spaeth, the long time plant manager of the Adell facility.. Mr. Spaeth states that at no time did Downing ever identify, segregate or in any manner separate inventory before it was actually delivered to either Cereal or Nutrients. If this fact is true, the whey would be property of the estate and the transfers avoidable.

In arguing against summary judgment on this issue, the defendants attempt to show that whey was identified to the contract and therefore, under § 2–501 of the Uniform Commercial Code (the "UCC") and common law theories, title to the whey passed to the defendants before the petition.[4] The argument then follows that the debtor was a mere bailee.

In support of their proposition, the defendants offer the affidavits of Nutrient's President and of both a former and present officer of Cereal, as well as an affidavit of defendants' counsel. The defendants also rely on the deposition of Downing's then CEO, Carol Hoekstra and language in Downing's form bill of sale. The Hoekstra deposition is of no assistance whatsoever to defendants. In her deposition, she said she did not have the slightest idea whether whey was ever set aside by Downing specifically for either these defendants. She said either Spaeth or Ogilvie would know, and Spaeth's affidavit denies any segregation of whey at any time for either defendant.

■ Viewing the evidence in a light most favorable to the defendants, Cereal's affidavits suggest at best that Hoekstra told Cereal that whey *would* be set aside for its benefit. There is no evidence whatsoever that whey actually was set aside by Downing for Cereal's benefit at any time. Fraud by Hoekstra is irrelevant under 11 U.S.C. § 549. Knowledge of the bankruptcy is irrelevant under 11 U.S.C. § 549. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 90 (1978). Good faith of the transferee is also is irrelevant under 11 U.S.C. § 549.[5] The result is simple. Cereal was an unsecured creditor of Downing at the time of the petition by virtue of its prepayment. There is no evidence whatsoever that any whey had been set aside for Cereal's benefit at the time of the petition. In other words, there is no evidence that what Cereal claims was supposed to be done was in fact done. Therefore, as far as Cereal is concerned, Downing still held title to the whey. The postpetition transfer or whey to Cereal was a transfer of property of the estate. It was not authorized by either court order or by the Bankruptcy Code. Therefore, it is avoidable, and summary

---

**4.** There is some suggestion in the record of an assertion by the defendants of a lien of some sort in the whey. The problem is that nowhere in this record is any such lien either identified or established. The defendants also refer to § 2–502 of the UCC. Section 2–502 of the UCC is remedial. It offers certain remedies to buyers only after they establish special property rights under § 2–501 of the UCC. Therefore, unless the defendants can establish special property rights in the whey, § 2–502 of the UCC is irrelevant. In addition, there is no evidence these defendants complied with the time limits fixed by § 2–502 of the UCC.

**5.** The fact that Downing failed to properly schedule Cereal and Nutrients as creditors is also irrelevant. Section 549 of the Bankruptcy Code, Title 11, is meant to produce *per se* results and promote equality of distribution in bankruptcy by, in effect, preventing postpetition preferences. *Compare* 11 U.S.C. § 547. The defendants' claim that failure to schedule their claims violated their due process rights is utterly without merit. The Bankruptcy Code and Rules have afforded these defendants ample and meaningful notice and opportunity to be heard before any property right of theirs is affected.

judgment must be granted in favor of the Committee against Cereal.

■ The result differs as to Nutrients. Wendel Miller, Nutrients' president, says in his affidavit that Carol Hoekstra specifically told him that whey had been set aside for Nutrients' benefit at or near the time of the petition. This statement contradicts the statements of both Hoekstra in her deposition and Spaeth in his affadavit and creates a genuine issue of material fact. Therefore, summary judgment cannot be granted against Nutrients.

■ As to the rest of the defendants' arguments, the word which leaps to mind is specious. Defendants' claim that these transfers cannot be set aside because the debtor was either a commodity broker or grain storage facility and therefore somehow the special provisions governing cases involving debtors who are commodity brokers or grain storage facilities apply. Downing was a manufacturer. It was obviously neither a commodity broker nor a grain storage facility under 11 U.S.C. § 556 or § 557. *See also* 11 U.S.C. § 101(5) and § 557(b). The fact that the debtor uses a dairy by-product in its manufacturing process or that its products are used for fertilizer and animal feed among other things does not make it into either a commodity broker or a grain storage facility. Therefore, those sections have no application to this proceeding.

Defendants also claim that the Committee does not have standing to bring this action. The Court has already ruled in another count of this adversary proceeding involving another defendant that the Committee does have standing to pursue this action. The reasons stated for that ruling are equally applicable to these defendants, and that ruling is the law of this case. *See generally, Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1363 (5th Cir.1986); *In re Marin Motor Oil, Inc.,* 689 F.2d 445, 451–54 (3d Cir.1982).

Motions are pending to substantively consolidate the Downing estate with the Chapter 11 estate of one of its subsidiaries, Downing of Kentucky, and/or the Chapter 11 estate of Carol Hoekstra. The defend-

ants claim that the decision on this summary judgment motion must await the outcome of the substantive consolidation motions. Grant or denial of the motions for consolidation, however, would have no effect whatsoever on the outcome of this litigation. The only issues relevant to this litigation are whether the whey in question was property of the estate, and whether it was transferred postpetition in violation of 11 U.S.C. § 549. Resolution of these issues would not be affected by a substantive consolidation. The date of the petition as well as the date of the transfers remains unchanged, even if the Downing estate is consolidated with one or both of the other estates.

■ Defendants also claim that these transfers cannot be recovered because the debtor defrauded them by failing to segregate whey for their benefit and therefore the debts owed them are nondischargeable. As previously indicated questions of fraud or knowledge of the bankruptcy are irrelevant to this litigation. Whether the debt owed these defendants would be dischargeable has nothing to do with recovery, even if the debtor is an individual. Parenthetically, it is worth noting that questions of dischargeability have no application whatsoever in bankruptcy cases involving corporate debtors such as Downing. See 11 U.S.C. §§ 727(a)(1), 1141(d)(2), *In re Quanta Resources Corp.* 739 F.2d 912, 915 n. 7 (3d Cir.1984) *aff'd, Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *In re Feldman,* 53 B.R. 355, 358 (Bankr.S.D.N.Y. 1985). A minimal amount of inquiry would have revealed this fact. In addition, a minimal amount of inquiry would have revealed that the 1978 adoption of the Bankruptcy Code clearly made knowledge by the transferee of the fact that the debtor is in bankruptcy irrelevant under 11 U.S.C. § 549 as applied to this type of transfer. H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978).

■ As to the measure of damages, the method of computation advanced by the Committee is obviously correct. The market price at the time of transfer is the proper measure of damages because that is what the debtor would have been able to get for its whey had it not been improperly transferred.[6] Similarly the Court agrees with the Committee that prejudgment interest should be included in the award in this case. The logic of *In re Foreman Industries, Inc.*, 59 B.R. 145, 155–56 (Bankr.S.D.Ohio 1986) is persuasive in this regard.[7] Such interest should run from the time of each improper postpetition transfer.

Finally, this Court urges defendants' attorney to read Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 as well as 28 U.S.C. § 1927. The days of the empty head, pure heart lawyer are gone. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). A lawyer must make reasonable inquiry before advancing defenses to a lawsuit. Many of the defenses raised by defendants, such as the grain elevator and commodity broker defenses are patently ridiculous. There is no support for them whatsoever. The Court has also considered the rest of the myriad of defenses raised by the defendants and finds them to be without merit except for the bailment defense of Nutrients.[8] Many, if not most, of these defenses appear to be raised solely

for delay. This Court will not hesitate to impose appropriate sanctions should the defendants attorney continue to file pleadings without making appropriate inquiry.

Therefore it is ordered that the Committee's motion for summary judgment against Cereal is granted and judgment is entered in the amount of $13,573.11 plus prejudgment interest as indicated above. The Committee's motion for summary judgment against Nutrients is denied. Trial as to Nutrients is set for September 8, 1987 at 2:00 p.m.

■

---

6. Lewis Carroll would be proud of defendants' argument that the only thing they have to return if they lose is the whey itself. The argument then follows that because the whey has been mixed into defendants' products or otherwise consumed no recovery is available. Unfortunately for the defendants the drafters of the Code were at least as clever as defendants' attorney and provided in 11 U.S.C. § 550(a) that under 11 U.S.C. § 549, the Court may order either recovery of the property itself or "[T]he value of such property...." A simple reading of the literal language of the Bankruptcy Code would have revealed to the defendants' attorney the speciousness of this argument.

7. *See also In re Missionary Baptist Foundation of America, Inc.,* 69 B.R. 536, 537–38 (Bankr.N. D.TX 1987); *Matter of Newman,* 64 B.R. 125, 126 (Bankr.W.D.Mo.1986); *In re Independent Clearing House Co.,* 41 B.R. 985, 1015–16 (Bankr.D.Utah 1984), *rev'd on other grounds, In re Universal Clearing House Co.,* 62 B.R. 118 (D.Utah 1986).

8. Some evidence of the level and quality of inquiry of counsel for the defendants can be seen in his reference at pp. 10–11 of his memorandum to 11 U.S.C. § 547(c)(2). He seems to suggest that provision saves a postpetition transfer made within 45 days after a prepetition prepayment. Sliding over the fact that § 547 only applies by its own very specific terms to prepetition transfers of property of the estate, *see* 11 U.S.C. § 547(b)(4), the 45 day rule referred to by defendants' counsel was amended in 1984, almost three years ago, to take the time limit out of 11 U.S.C. § 547(c)(2). *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 378. That amendment became effective in cases filed on or after October 9, 1984, more than one year before the petition was filed in this case. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 392.