**In re D.E. BROWN, Debtor.**

**Gregg PRITCHARD, Trustee, Plaintiff,**

**v.**

**Janice E. BROWN, Defendant.**

**Bankruptcy No. 388–33220 RCM–7. Adv. No. 389–3706.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 18, 1990.

58

Michelle A. Mendez, Dallas, Tex., for plaintiff.

Robert L. Yeager, III, Dallas, Tex., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT McGUIRE, Chief Judge.

Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, with respect to the trial on May 15, 1990.

#### Findings of Fact

1. This proceeding relates to the bankruptcy case of D.E. Brown ("Debtor"), Case No. 388–33220 RCM–7, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Case").

2. Gregg Pritchard, Trustee ("Plaintiff" or "Trustee"), was appointed as Trustee on June 14, 1988, and accepted his appointment on June 15, 1988.

3. Plaintiff is duly qualified and is acting in his capacity as Trustee.

4. At all times material hereto, Janice E. Brown ("Defendant") was married to Debtor.

5. Between August 31, 1984 and December 15, 1987, Defendant loaned her husband, Debtor, a total of $138,200 paid to Debtor by checks drawn on Defendant's personal checking accounts (the "Loan").

6. Between August 31, 1984 and November 30, 1987, Defendant was a creditor of Debtor.

7. On or about December 17, 1987, in repayment of the Loan, Debtor assigned an oil and gas lease covering approximately 160 acres and a working interest in one producing oil well in Jack County, Texas, commonly known as the House Ranch Lease (the "Lease") and House Ranch Well (the "Well") (collectively, the "Transferred Property"), respectively, to Defendant by an Assignment of Oil and Gas Lease dated to be effective as of November 30, 1987, which was recorded in the real property records of Jack County, Texas (the "Transfer").

8. The Transfer benefitted Defendant as a creditor of Debtor.

9. Debtor was insolvent at the time he transferred the Lease and the Well to Defendant.

10. The Transfer to Defendant was made for or on account of an antecedent debt owed by Debtor before such Transfer.

11. On June 1, 1988, more than ninety days, but less than one year after the Transfer to Defendant, Debtor filed the Bankruptcy Case under Chapter 7 of the United States Bankruptcy Code (the "Code").

12. The Transfer enabled Defendant to recover more than she would have received if the Transfer had not been made

and if Defendant has received payment of her debt to the extent provided by the provisions of Chapter 7 of Title 11 of the Code as a creditor with a claim in the Bankruptcy Case.

13. The property transferred preferentially by Debtor to Defendant was, at such time, worth $70,000. In Defendant and Debtor's tax return of 1988, Schedule D, the parties showed that the transaction occurred on February 1, 1988, rather than 1987 when it actually occurred, and that the sales price was $130,200. There was, likewise, some testimony that one way of valuing the property at such time would be forty months times monthly gross receipts. While such tax statement and the mechanical formula of forty months would be some indication of value, the Court finds that $70,000 more closely approximates the value at the time of the Transfer. The net monthly income at the time of the Transfer was in the range of $2,000. At trial, the value of the Transferred Property was heavily disputed. During the period the Defendant owned the Transferred Property, gas was produced and sold from the Well.

14. Defendant was credited with $26,597 in production revenues from the sale of gas during the time she was the record owner of the Transferred Property. However, Defendant never received the proceeds from production, which were, instead, received by the operator of the property, who used such proceeds in part to fund remedial work performed on the Well in an attempt to stimulate increased production. Defendant did, of course, receive the benefit of the possibility of increased production from the Well by reason of such expenditures. The Well had been producing for a number of years and it was anticipated by Defendant and Debtor, in November 1987, that the Well would continue to produce for a number of years in the future.

15. On or about July 25, 1989, Defendant assigned her interest in the Transferred Property to the then-operator in consideration of the cancellation of a pipeline purchase agreement previously entered into and a production payment. Thereafter, she received no future payments on the Well.

16. The subsequent assignment and transfer of the Transferred Property was made approximately three months prior to the filing of this adversary proceeding, and prior to any demand or claim for the return of the Transferred Property.

Defendant received the Transfer in good faith, and subsequently assigned it in good faith. It further appears that, to some extent, Defendant actually was taken financial advantage of by the interest of Debtor in the course of some of the transactions described herein.

17. On May 8, 1990, Defendant caused WCTX Corporation ("WCTX") to execute an alleged assignment of the Lease to Trustee (DX 5). WCTX Corporation supposedly is the present owner of the Lease. However, the property description in DX 5 is different from the property description in the original assignment of such lease to Defendant (PX 3). *Also see,* DXs 6 and 7. Trustee did not accept the tender of such property, contending, among other things:

A. The WCTX assignment was of questionable validity because of the difference in property descriptions.

B. There had been a hole in the casing and Trustee feared possible EPA violations arising from same. There was no contention that same was, in any manner, attributable to Defendant.

C. Trustee did not know the severity of the Well damage.

D. There had been a dramatic reduction in the Well allowable from the time of the November, 1987 Transfer until the time of trial, making the Well value more speculative than it had been in November and December, 1987.

E. The only way to economically produce the Well is through a pipeline owned by the children of Defendant and Debtor, and therefore, there is a question of whether the gas could economically be transferred the seven miles it is necessary to transfer it.

F. Trustee believed the operator's charges were excessive.

G. There had been depletion of the asset. The contentions in Findings 17A, B, C, E, and G were valid concerns of Trustee. Finding 17D appeared to be a change in market conditions and 17F appeared to be a concern that could be validly addressed by hiring another operator.

### Conclusions of Law

1. This action arises under Title 11 of the Code; therefore, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(b) and 157.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4. Defendant is a relative of Debtor, and therefore, is an insider as defined by § 101(30)(A)(i) of the Code.

■ 5. The Transfer was a preferential transfer as that term is used in 11 U.S.C. § 547(b).

6. The Trustee may avoid the Transfer pursuant to 11 U.S.C. § 547(b).

■ 7. Plaintiff's continuation of this case following Defendant's purported tender of the Transferred Property back did not constitute a Rule 11 violation. Plaintiff acted in good faith and Plaintiff's position was supported by the law. In *In re Morris Communications NC Inc.*, 75 B.R. 619, 629 (Bankr.W.D.N.C.1987), the court states:

> ... Section 550(a) *does not state at what time this value is to be determined.* Based on the language of Section 550(a), this Court finds a congressional intent to return the property transferred unless to do so would be inequitable.

For the reasons stated in Finding 17, the Court finds that it would be inappropriate, inequitable, and impracticable to require Plaintiff to take back the Transferred Property, as tendered, at this time, as opposed to having a judgment for the value of the Transferred Property.

There was not a purported actual attempted tender back until May 8, 1990, seven days before trial, although Plaintiff's complaint was not amended until approximately May 11, 1990, when Plaintiff changed his prayer, from requesting the Transferred Property and proceeds back, to praying for recovery of the value of the Transferred Property and all proceeds.

■ 8. If the Court were to assess value of the Well at the time of petition date or trial, rather than at the time of the Transfer, the value was considerably reduced, and is in the approximate range of $27,000. In *Matter of Blackburn*, 90 B.R. 569, 573 (Bankr.M.D.Ga.1987), the court stated:

> [5] The purpose of section 550(a) is to restore the financial condition of the estate to the state in which it would have been had the transfer not occurred. *Rieber v. Baker (In re Baker)*, 17 B.R. 392, 395 (Bankr.W.D.N.Y.1982). When the trustee seeks to recover the value of the transferred property, rather than the property itself, the time at which the value is measured depends upon the circumstances of each individual case. *See* 4 *Collier on Bankruptcy* ¶ 550.02 n. 6 (15th ed.1987). Because of the depreciable nature of the property involved in this adversary proceeding, the Court finds that Trustee is entitled to recover the value of the property at the time of transfer.

One court has found § 550(d) as support for the proposition that the trustee is entitled to recover the greater of (1) the value at the time of transfer, and (2) the value at the time of recovery, less a deduction for the amount in which the transferee would have a lien if the trustee recovered the property. *In re Southwest Community Media, Inc.*, 27 B.R. 834, 844 (Bankr.E.D.Tenn.1983). For a similar holding, see *In re Jet Florida System, Inc.*, 105 B.R. 137 (Bankr.S.D.Fla.1989). In *In re James B. Downing & Co.*, 74 B.R. 906, 911 (Bankr.N.D.Ill.1987), the court held that market price at the time of the transfer is the proper measure of damages because that is what the debtor would have been able to get for

the property had it not been improperly transferred. In *In re Computer Universe, Inc.*, 58 B.R. 28, 32 (Bankr.M.D.Fla.1986), the court stated:

██ Section 550(a) of the Bankruptcy Code permits the court to order either return of the property transferred or enter judgment for the value of the property.

Return of the property would be inappropriate in this instance. The defendant has been using the equipment for over a year. Although there was little direct testimony on the point, the defendant cannot seriously argue that personal property of this sort does not depreciate in value. The plaintiff cannot be made whole by the return of used computer equipment any more than by the return of an automobile that was transferred new but used for a year. *See In re Hudson*, 28 B.R. 876 (Bkrp.E.D.Tenn. 1983); 4 *Collier 15th* ¶ 550.02 n. 6. If the property were still worth its original value, the defendant could sell it and satisfy a money judgment; if not, the defendant has been enriched at the expense of the estate. Any relief other than entry of a money judgment would encourage transferees to resist recovery as long as possible in order to maximize their free rent. At the very least, the equipment should be valued as of the date of the petition when, the testimony suggests, it was largely unused. *See In re Adams*, 2 B.R. 313 (Bkrp.M.D.Fla. 1980).

For a case somewhat similar to the facts of our case, where there was a § 548 transfer to a debtor's wife of a yacht subsequently damaged by fire, see, *In re Baker*, 17 B.R. 392, 395 (Bankr.W.D.N.Y.1982). The court awarded the trustee the yacht and insurance proceeds, less the value of liens against it; in effect, the value at the date of transfer. For a case talking in terms of value at the time of the petition date, see *Matter of Nevada Implement Co.*, 22 B.R. 105, 107 (Bankr.W.D.Mo.1982). Under the facts and circumstances of this case, the Court finds the Plaintiff is entitled to recover the value of the Transferred Property at the time of the Transfer, *i.e.*, $70,000, plus interest.

██ 9. Improvements to the property under § 550(d) (*See*, Finding 14) are not a concern in this case because the Defendant is retaining whatever property interest remains in the Transferred Property, and therefore, she is not entitled to any lien under § 550(d).

██ 10. Plaintiff is not entitled to attorney fees for recovering a preference.

11. The above and foregoing constitute the Court's findings of fact and conclusions of law. Where appropriate, a finding of fact shall be deemed to be a conclusion of law, and *vice versa.*