**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 14 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

In re:

INTEGRA REALTY RESOURCES,
INC.; INTEGRA - A HOTEL AND
RESTAURANT COMPANY; BHC OF
DENVER, INC.,

      Debtors.

_____

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

          Plaintiff - Appellee,

      v.

FIDELITY CAPITAL
APPRECIATION FUND,

          Defendant - Appellee,

and

JEFFREY D. ZYSKOWSKI and
MARILYN J. ZYSKOWSKI,

          Defendants - Appellants.

_____

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

          Plaintiff - Appellee,

No. 99-1547

No. 99-1548

v.

FIDELITY CAPITAL
APPRECIATION FUND,

        Defendant - Appellee,

and

ELIEZER EISENBERG,

        Defendant - Appellant.
_____

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

        Plaintiff - Appellee,

     v.

FIDELITY CAPITAL
APPRECIATION FUND,

        Defendant - Appellee,

and

JAMES CALDWELL, JOSELITO
MILLAN, ROBERT ALLEN WARD,
MARJORIE WARD, MARVIN
BARTLING, DOMINIC GIOIOSO,
LEON BELL, IRWIN YAMAMOTO,
and THOMAS R. ULIE, as custodian
FBO Alexander James Ulie,

        Defendants - Appellants.
_____

No. 99-1569

-2-

JEFFREY A. WEINMAN, as Trustee for the Integra Unsecured Creditors' Trust,

        Plaintiff - Appellee,

    v.

FIDELITY CAPITAL APPRECIATION FUND,

        Defendant - Appellee,

and

DEXTER YAMAMOTO, RONALD YAMAMOTO, GEORGE YAMASAKI, JR., and EDWARD BLIZEWSKI,

        Defendants - Appellants.

No. 99-1586

_____

JEFFREY A. WEINMAN, as Trustee for the Integra Unsecured Creditors' Trust,

        Plaintiff - Appellee,

    v.

FIDELITY CAPITAL APPRECIATION FUND,

        Defendant - Appellee,

and

E. THOMAS SPENGLER,

        Defendant - Appellant.

No. 00-1018

-3-

Jeffrey J. Greenbaum, Sills, Cummis, Radin, Tischman, Epstein & Gross, P.A.,
Newark, New Jersey (Steven D. Gorelick, Sills, Cummis, Radin, Tischman,
Epstein & Gross, Newark, New Jersey; Chesley K. Culp III and Dianne M. Kueck,
Moye, Giles, O'Keefe, Vermeire & Gorrell LLP, Denver, Colorado, with him on
the briefs) for Defendants - Appellants.

John C. Smiley (Harold G. Morris, Jr., and Patrick D. Frye with him on the brief),
Lindquist & Vennum, P.L.L.P., Denver, Colorado, for Plaintiff - Appellee.

Before **TACHA**, Chief Judge, and **ANDERSON** and **BRISCOE**, Circuit Judges.

**ANDERSON**, Circuit Judge.

In these appeals, we consider for a second time challenges to the settlement
of a defendant class action arising out of the 1992 bankruptcy of Integra Realty
Resources, Inc. ("Integra"). See Weinman v. Fid. Capital Appreciation Fund (In
re Integra Realty Res., Inc.), 262 F.3d 1089 (10th Cir. 2001) ("Integra I").

The appellants contend that the district court erred in approving the class
settlement because: (1) the bankruptcy court's certification of (allegedly) a Fed.
R. Civ. P. 23(b)(1)(A) class was improper; (2) inadequate notice to members of
the class at every critical stage of the proceedings violated both due process and
the requirements of Rule 23; (3) the class members lacked adequate representation

-4-

because, among other things, the interests of one class representative, Fidelity Capital Appreciation Fund ("Fidelity") and its counsel, designated as lead counsel, conflicted with those of other class members; (4) the settlement was not fairly negotiated, and is unfair, unreasonable, and excessive; (5) the district court erred by failing to weigh various defenses and objections (more fully set out below), and failed to consider other legal and factual issues; and (6) the bankruptcy court erred in denying a dispositive motion seeking to dismiss this action on any of four separate grounds set forth in the motion (more specifically described below).

These issues are substantially identical to the ones raised in Integra I; but we addressed only some of them in Integra I due to our conclusion that the appellants lacked standing to appeal.[1] The Supreme Court's subsequent decision in Devlin v. Scardelletti, 536 U.S. 1 (2002), undercut that ruling. Accordingly,

---

[1]In both Integra I and here we joined numerous appeals for procedural purposes and, as relevant here, the appellants joined in a single opening and reply brief. See Fed. R. App. P. 3(b)(2). The same counsel and virtually identical briefs on the merits were before us then and again now.

Due to the congruence of issues in the Integra I appeals and the subsequently docketed appeals now before us, we abated these appeals pending our decision in Integra I. Following that decision, we ordered the parties to file briefs addressing whether our decision in Integra I dictated that these appeals should also be dismissed. Shortly before the Supreme Court's decision in Devlin v. Scardelletti, 536 U.S. 1 (2002), was issued, we ordered the parties to file briefs on the merits. Because the five separate appeals addressed here (Docket Nos. 99-1547, 99-1548, 99-1569, 99-1586 and 00-1018) have been combined for convenience, we refer at various places to this appeal in the singular.

-5-

the appellants here further assert that they and the Integra I appellants have "standing" to appeal and that we should reopen the appeals dismissed in Integra I. They urge us to reverse the order entered by the district court approving the class settlement, vacate the class settlement and the class certification upon which it was based, vacate the judgments against the appellants entered pursuant to the settlement, and dismiss the action in its entirety. Defendants-Appellants' Br. at 3.

For the reasons set out below, we conclude that certain of these appellants have the right to appeal the settlement and that, therefore, the issues are properly before us. We further conclude that there is no reversible error. Accordingly, we affirm the settlement approval order and resulting judgments of the district court against these appellants.

## BACKGROUND

The history of this case is set out in detail in three prior published opinions. See Integra I; Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.), 198 B.R. 352 (Bankr. D. Colo. 1996); Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.), 179 B.R. 264 (Bankr. D. Colo. 1995). We summarize some, and repeat and add to other of those underlying facts as follows.

Integra was incorporated as a hotel business in 1969 and went public in 1980 under the name Brock Hotel Corporation. About that time it expanded into the restaurant business through a subsidiary corporation, ShowBiz Pizza Place, Inc., in which Brock had a 57% stock ownership interest. In 1985 ShowBiz Pizza Place purchased most of the assets of a competitor and changed its name to ShowBiz Pizza Time, Inc. ("ShowBiz"). In 1986 Hallwood Group, Inc. ("Hallwood"), a publicly traded merchant banking firm, entered the picture. It implemented a financial restructuring plan through which, in addition to the restructuring of Brock's debt, Hallwood acquired 14% of Brock's stock, placed five Hallwood directors on Brock's seven-person board, and caused Brock to increase its ownership of ShowBiz stock to 90%.

In 1987 Brock, through a wholly-owned subsidiary, BHC Acquisition Corp. ("BAC"), bought most of the assets of Monterey House, Inc. (Tex-Mex restaurants). The financial burden of that acquisition led to a negative cash flow at Brock and reliance on ShowBiz for varying degrees of financial support.

In 1988 Brock was renamed "Integra - a Hotel and Restaurant Company," and continued trading as such on the New York Stock Exchange. At the beginning of the year Integra, pursuing its two lines of business, owned and operated thirty-eight hotels in twenty-two states and, through ShowBiz and BAC,

183 restaurants in twenty-one states. ShowBiz had 125 of the restaurants and BAC had fifty-eight.

In July 1988 Integra and ShowBiz, with Hallwood's continuing involvement, undertook further corporate and financial restructuring. Integra sold BAC to ShowBiz, which then owned Integra's entire restaurant operation. A complex series of debt and securities transactions also took place. Most pertinent to this case, Integra, ShowBiz, and Hallwood agreed to a plan whereby Integra would spin off its 90% stake in ShowBiz to Integra shareholders in December 1988. The spinoff was to be tax free under § 355 of the Internal Revenue Code, 26 U.S.C. § 355, and required no vote by or compensation from the Integra shareholders. The plan contemplated that the ShowBiz stock would be listed and traded on the NASDAQ.

As indicated above, it is alleged that Integra was experiencing financial difficulties that would be exacerbated by the distribution of its restaurant business to its shareholders. Significantly in that regard, prior to the spinoff ShowBiz mailed to each shareholder of Integra or ShowBiz a prospectus containing the following warning, which also appeared in the registration statement filed with the SEC:

> If . . . Integra is unable to satisfy its future cash requirements, a recipient of the [ShowBiz] Common Stock in the Integra Distribution might be required to surrender to a trustee in bankruptcy, or

> creditors, of Integra the shares of the [ShowBiz] Common Stock
> received in the Integra Distribution, or the value thereof.

In re Integra Realty Res., Inc., 198 B.R. at 355 (quoting ShowBiz prospectus) (emphasis added).

The closing took place on December 30, 1988, at which time Integra delivered 3,822,230 shares of ShowBiz common stock to be distributed to the 5,415 record owners of Integra common stock at a final distribution ratio of .429 ShowBiz shares for each share of Integra. On January 3, 1989, one day before public trading in ShowBiz stock began, the closing price of Integra was $4 7/8 ($4.88) per share. The next day, January 4, 1989, Integra closed at $1 3/4 ($1.75) per share and ShowBiz closed at $5 ½ ($5.50) per share, amounting, when combined, to a paper loss of $0.77 per Integra share as a result of the spinoff.

After distributing its restaurant business to its shareholders, Integra went straight downhill. Within one year, its stock was at $0.25 per share. The NYSE halted trading in the stock on December 6, 1991, with the price at $0.125 per share. On July 14, 1992 Integra filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, continuing the chain of events which began with the 1988 spinoff and which underlies these appeals.

Meanwhile, ShowBiz stock prospered. It was trading at $51.75 per share (split adjusted) on the date Integra filed its petition in bankruptcy. By December 1, 1997, the date of the amended class settlement agreement between class

counsel and the Trustee, ShowBiz shares were at $75.39 (split adjusted) and, by March 6, 1998, a few weeks prior to the fairness hearing on the class action settlement in district court, the stock price reached $101.25 per share (the last quote available in the record). In sum, the aggregate market value of the 3,822,230 shares of ShowBiz stock went from $21,022,265 on the first day of trading after the spinoff to $387,000,787 at the time of the settlement fairness hearing. The aggregate total settlement which the district court was asked to approve, and which is before us (assuming, hypothetically, that all shareholders were to settle at $7.00 per share, without taking into account those who settled separately before class certification) amounts to $26,755,610.

**Commencement of the Adversary Proceeding**

In 1994 the bankruptcy court approved Integra's First Amended Chapter 11 Plan of Reorganization (the "Plan"). The Plan canceled the equity interests of the approximately 7,000 shareholders still holding Integra common stock and approved the formation of a trust to act on behalf of Integra's unsecured creditors (the "Trust"). Pursuant to the Plan the bankruptcy court assigned to the Trust a variety of potential claims, including all claims against any person or entity arising from the December 1988 distribution by Integra of the ShowBiz stock.

The Plan also incorporated a settlement agreement between Integra, the Trust and various Hallwood-related individuals and entities with respect to claims that Integra might assert against Hallwood and the five Hallwood-appointed directors. Hallwood paid $9 million directly to the Trust in settlement, and another $1 million to Integra to purchase all of the newly-issued reorganized Integra stock, which amount Integra then assigned to the Trust. Pursuant to the agreement and payment, the bankruptcy court released the settling parties from further liability for Integra's claims, which are defined as follows: "[A]ll Core Claims and Claims . . . which Integra and the Bankruptcy Estate ever had or now has or may have at the Effective Date, including without limitations Claims held in Integra's corporate capacity and Claims arising in or under Chapter 5 of the Bankruptcy Code." Integra I, 262 F.3d at 1097. In accord with the settlement, the bankruptcy court also issued an injunction barring suits by "All Persons" against or affecting any of the settling parties with respect to these claims. Appellants' App. Vol. 1 at 281-83.

Subsequently, the plaintiff in this case, Jeffrey A. Weinman, as Trustee for the unsecured creditors' Trust, filed this adversary proceeding against Fidelity and all other beneficial recipients of the ShowBiz shares distributed in the 1988 spinoff. The suit sought to recover those shares or their value for the benefit of the Trust beneficiaries. The Trustee's theory was that the distribution was a

fraudulent transfer pursuant to the Texas Fraudulent Transfer Act, Texas Bus. &
Com. Code Ann. §§ 24.001 -.012, or an unlawful dividend pursuant to the
Delaware Code, Del. Code Ann. tit. 8, §§ 160, 173 and 174(a).  The complaint
sought relief pursuant to several provisions of the United States Bankruptcy Code,
11 U.S.C. §§ 105, 544, 550, 1123 and 1145.

## Certification of a 23(b)(1) Defendant Class

The original complaint, filed by the Trustee on July 11, 1994, listed over
800 individual shareholders as defendants.  This list was expanded to include
approximately 6000 defendants by the time of the fourth amended complaint, filed
August 30, 1996.  The original complaint also requested, pursuant to Fed. R.
Bankr. P. 7023, which incorporates Fed. R. Civ. P. 23, that the court certify a
defendant class of all spinoff shareholders and designate all 800 defendants listed
as class representatives.

On February 5, 1995, the bankruptcy court granted the Trustee's motion
and certified a defendant class under Rule 23(b)(1) of "all persons or entities that
were the beneficial recipients of the December 1988 transfer of 3,822,230 shares
of ShowBiz Pizza Time, Inc. stock from Integra (except those with whom
settlement has been reached)."  In re Integra Realty Res., Inc., 179 B.R. at 272.
However, the court limited the number of class representatives to seven, including

Fidelity, which was the largest recipient of ShowBiz shares in the spinoff, and E. Thomas Spengler, one of the appellants in the present appeal. Id. After a hearing, the court, in an order dated May 19, 1995, designated Fidelity's counsel as sole class counsel, reasoning that Fidelity's counsel had demonstrated competence to act in that capacity while other attorneys representing other class representatives "have not consistently displayed the same capability or familiarity with the local pleading practice, case management practice and indeed the law in this jurisdiction." Appellants' App. Vol. 2 at 378. Subsequently, in response to the motion of defendants seeking a jury trial, the district court on July 27, 1995 withdrew the reference of this adversary proceeding to the bankruptcy court, but remanded for the administration of all pretrial matters.

**Fidelity's Preliminary Dispositive Motion and Subsequent Settlement**

Acting on behalf of the class, Fidelity filed a preliminary dispositive motion in the bankruptcy court seeking dismissal of the action on three dispositive grounds: that the distribution constituted a settlement payment and thus under 11 U.S.C. § 546(e) was not subject to recovery by the Trustee; the fraudulent conveyance claim is governed by Delaware law and is therefore barred by Delaware's three-year statute of limitations; and the Delaware unlawful dividend statute does not provide creditors with a claim against shareholders. In

re Integra Realty Res., Inc., 198 B.R. at 353. Fidelity also argued that post-distribution creditors were barred from recovery. Id. at 363. The court decided all four issues against Fidelity. Id. at 363-65. In an order dated August 8, 1996, the district court denied Fidelity's motion for leave to pursue an interlocutory appeal from that decision.

Thereafter, Fidelity and the Trustee engaged in extended settlement negotiations, reaching an initial agreement in May 1997. In light of this agreement, the district court on November 12, 1997 withdrew its remand of the adversary proceeding to the bankruptcy court. In December 1997 the Trustee and Fidelity submitted an amended agreement to the district court. Under the terms of this agreement, each class member would pay the Trustee the lesser of $7 per share of ShowBiz stock received or the amount obtained for the stock if it had been sold.

In accord with Rule 23(e)'s provisions regarding class action settlements, the district court scheduled a fairness hearing for March 24, 1998. The court ordered notice of the settlement and the hearing to be mailed to each known defendant class member at the address according to the Trustee's records. The notice informed class members that the court had set February 24, 1998 as the deadline by which those who wished to submit written comments on the settlement must submit them, and those who wished to object at the fairness

hearing must file a Notice of Intention to Appear and Object together with supporting documents. The notice included the court's warning that class members who did not file the requisite notice of intention to appear and object would not be "entitled in any way to contest the approval of the Settlement" at the fairness hearing. Trustee's App. Vol. 3 at 2136.

The vast majority of the class members submitted neither comments nor a notice of intention to appear and object. Among those who did were appellant Dominic Gioioso, who filed written objections, and attorney I. Walton Bader, who filed a notice of intent to appear and object along with written objections on behalf of an informal committee of ShowBiz shareholders as well as a list of individual class members that included appellants Spengler and Thomas R. Ulie as Custodian for Alexander James Ulie.

On March 23, 1998, the day before the settlement fairness hearing was scheduled to take place, the Trustee acquiesced to the demand, expressed in some of the filed objections, that class members be allowed to opt out of the settlement in order to continue litigating their defenses against the Trustee's claims. The Trustee and Fidelity then amended the settlement agreement to include such an opt-out provision.

At the fairness hearing on March 24, 1998, those making appearances in order to object to the settlement included Mr. Bader, on behalf of both the

committee and the list of individual class members that included Mr. Spengler and Mr. Ulie as Custodian. The objectors, essentially raising the issues now pursued on appeal, argued that the class certification was improper; that Fidelity had not adequately represented the class; that for various reasons the settlement agreement was not fair and reasonable; that the bankruptcy court erred in denying Fidelity's preliminary dispositive motion; and that the class action notices that had been issued in the case were inadequate to satisfy either the requirements of due process or of Rule 23. In response to the objectors' concern that many class members may not have received the notice of the settlement and hearing, the court ordered the Trustee to submit a report on the deliverability of that notice.

The Trustee did so on April 24, 1998. His report indicates that notice of the settlement and hearing was mailed to the 6,423 known members of the class. Of these, approximately 1,455 notices, representing 296,292 shares, were returned as undelivered. Appellants' App. Vol. 3 at 829.

Following the hearing and the Trustee's submission of this report, the district court on July 7, 1999 issued an order and final judgment approving the settlement agreement with the opt-out provision. Pursuant to the court's order, the Trustee gave defendant class members notice of the court's approval both by mail, as before, and by publication. The notice included the deadline—September 15, 1999—by which each class member must either accept the settlement without

individual defenses; accept the settlement subject to individual defenses or objections as to the number of shares held; or opt out of the settlement and remain a defendant in the adversary proceeding. Class members who did nothing before the deadline would have individual final judgments entered against them three days after the deadline. Class members who raised individual defenses or objections would not have a final judgment entered against them until their individual issues were judicially resolved. Id. at 843.

According to the Trustee, only some 250 of the more than 6,000 defendants opted out of the settlement—approximately 4-1/2 percent. Plaintiff-Appellee's Resp. Br. at 10. Additionally, of course, some of the appellants in Integra I, and all of those in this appeal, did not opt out, choosing, instead, to appeal. Individual final judgments have been entered against each of the appellants in this case. Appellant Spengler originally asserted an individual defense but then withdrew it and consented to the entry of final judgment.

## DISCUSSION

### A.

### Standing / Right to Appeal

In Integra I we dismissed the appeals for lack of standing. We reasoned first that appellants who had opted out of the settlement lacked standing to contest

the settlement on appeal.  Integra I, 262 F.3d at 1103.  Next, applying our rule in Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993), we held that unnamed class members who had judgments entered against them but who had failed to file intervention motions in the district court, pursuant to Fed. R. Civ. P. 24(a), lacked standing to appeal.  Integra I, 262 F.3d at 1103.

As indicated above, the Supreme Court subsequently ruled in a class action without opt-out rights that an unnamed class member is not required to seek intervention in the district court in order to appeal, although "object[ion] during the fairness hearing" in the district court remains a requirement.  Devlin, 536 U.S. at 11.  The Court also clarified that the issue relating to whether a class member can appeal from a district court's approval of a class settlement is not one of Article III jurisdiction or of prudential standing, as we characterized it in Integra I.  Rather, the issue is "whether [the appellants] should be considered a 'party' for the purposes of appealing the approval of the settlement."  Id. at 7.  The Court explained that "[n]onnamed class members . . . may be parties for some purposes and not for others.  The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."  Id. at 9-10.  The Court articulated the issue in terms of "the right to appeal."  Id. at 7.  Accordingly, we proceed on that characterization.

-18-

All of the individuals involved in the five appeals now before us were named as defendants at the outset of the suit, prior to class certification. All but three of them neither filed written objections to the settlement nor moved to intervene; nor did they appear at the fairness hearing. One of the remaining three, Mr. Gioioso, filed a written objection but did not file notice of his intent to appear and object and did not appear at the fairness hearing. As indicated above, two others, Mr. Ulie in his custodial capacity and Mr. Spengler, did file notices of intention to appear and object and did appear at the fairness hearing through counsel, Mr. Bader. As further indicated above, none of the appellants (including Ulie in his capacity as custodian) opted out of the settlement, and all had final judgments entered against them pursuant to the terms of the settlement.

In asserting their right to appeal, the appellants rely on the fact that they were all originally individually named as defendants in this action. They argue that as named defendants having individual judgments entered against them, they have the right to appeal these judgments. In their view, certification of the case as a class action with named class representatives did not diminish their status as named parties. In so arguing, they necessarily contend that our opinion in Integra I was wrong when it classified the originally-named defendants as unnamed members of the class following class certification. See Integra I, 262 F.3d at 1104 n.14. In support, they argue that Devlin not only changed the intervention

rules we applied in <u>Integra I</u>, it clarified how we should treat named parties as well.  In any event, they argue, Spengler, Ulie and Gioioso have the right to appeal.

At the outset we note that nothing in <u>Devlin</u> overrides the conclusion we reached in <u>Integra I</u> that "[d]espite having been named in the complaint, Appellants nonetheless appear now as unnamed class members, because the district court certified the case as a class action and designated representative defendants. . . ."  <u>Id.</u>  Accordingly, we reject the argument here, as we did in <u>Integra I</u>, that the appellants have the right to appeal judgments entered against them simply because they were originally named as parties.

Additionally, <u>Devlin</u> reinforces the proposition that an unnamed class member who does not opt out and desires to appeal a class settlement must at least object in the district court.  <u>Devlin</u>, 536 U.S. at 11.  A motion to intervene pursuant to Rule 24(a) serves the same purpose.  Since all but three of the appellants in these appeals neither objected nor sought to intervene in the district court, we hold that they have no right to appeal.

That leaves appellants Gioioso, Ulie and Spengler, who did object, either directly or through counsel, and who did not opt out.  As to them, we first address the Trustee's threshold argument that where the option to opt out of a settlement exists, that forecloses any right to appeal the settlement.  Plaintiff-Appellee's

Resp. Br. at 19-21. Contrary to the Trustee's assertions, we did not so hold in Integra I. Rather, our analysis of the intervention requirement necessarily proceeded on the premise that failure to opt out of the settlement was not itself a bar to appeal. While Devlin involved a non-opt out class, the Court's reasoning also suggests that the right of an objecting class member to appeal must be recognized. We now make explicit what we implicitly held in Integra I and hold that a class member who does not opt out of a settlement but objects at the fairness hearing and against whom a final judgment is entered has the right to appeal the district court's approval of the settlement. See Thompson v. Metro. Life Ins., 216 F.R.D. 55, 70 (S.D.N.Y. 2003). This answers the question we left open in Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F. 3d 1180, 1185 n.2 (10th Cir. 2002), as to whether Devlin applies to opt-out class settlements.

Under that rule, it would appear that all three objecting class members, Gioioso, Ulie and Spengler, qualify as parties having the right to appeal. But, on further analysis, we cannot reach that conclusion as to Mr. Gioioso because his written objection does not meet the district court's stated requirements for objecting at the fairness hearing. The district court allowed class members to file comments on the settlement agreement in writing without making an appearance at the fairness hearing. However, it specified that in order to preserve a right to contest the approval of the settlement at the fairness hearing, a class member must

file a Notice of Intention to Appear and Object. This requirement was included in the Notice of Proposed Class Settlement and Rights of Class Members that was mailed to all known class members. Mr. Gioioso presumably received this Notice since he filed written objections in response. We hold that Mr. Gioioso did not take the procedural steps necessary to have "objected during the fairness hearing" as required by Devlin, 536 U.S. at 11.

Messrs. Ulie as custodian and Spengler, however, have the right to appeal. Both, through counsel, filed the required notice of intent and appeared at the fairness hearing. But there is an overriding and dispositive reason as to Mr. Spengler.

As indicated above, Mr. Spengler was designated by the bankruptcy court as one of the seven class representatives when the court certified this suit as a defendant class action. In re Integra Realty Res., Inc., 179 B.R. at 272. As an alternative to our holding that objecting unnamed class members have the right to appeal an opt-out settlement, we also hold that an objecting class representative, who has not opted out of the settlement, is a party having the right to appeal. We implied as much in Integra I, 262 F.3d at 1103. Thus, we reject the Trustee's argument that opting out of the settlement was the only permissible avenue for Mr. Spengler to take. In effect, the Trustee's position, unsupported by any direct authority, is that a class action settlement with an opt-out provision can never be

appealed, even by a class representative. We disagree. Likewise, we reject the argument that Spengler's consent to a judgment forfeited his right to appeal. A final judgment is a prerequisite to appeal, and was so as to Mr. Spengler. In short, Mr. Spengler is a proper party to appeal, and his appeal is sufficient to bring before us the issues outlined above.[2]

Because Mr. Spengler's appeal is sufficient, and since, as the following discussion shows, we rule for the Trustee on the merits, the other appellants' arguments in support of their right to appeal are, as a practical matter, moot in any event.

**B.**

### Integra I — Law of the Case
### Adequacy of Class Representative and Notice to Class Members

The division of appeals in this case between those considered in <u>Integra I</u> and those now before us was for administrative, not for substantive reasons. The case in the district court is common to all appeals, and the central issues, briefs and counsel in the appeals here duplicate those in <u>Integra I</u>. Accordingly, as the

---

[2]We note that the caption in <u>Integra I</u> lists E. Thomas Spengler among one group of defendant-appellants. It seems that Spengler was included in the caption as a member of the Ad Hoc Protective Committee for ShowBiz Stockholders and thus did not bring his status as class representative to the attention of the court. <u>See</u> <u>Integra I</u>, 262 F.3d at 1097-98 nn. 4, 5. More to the point, Mr. Spengler's separate appeal is before us here.

-23-

appellants recognize, Defendants-Appellants' Reply Br. at 21-22, the issues raised and decided in Integra I, which are raised again here, are subject to the law of the case doctrine.

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. LaHue, 261 F.3d 993, 1010 (10th Cir. 2001) (further quotation omitted). It "applies to issues previously decided, either explicitly or by necessary implication." Octagon Res., Inc. v. Bonnett Res. Corp. (In re Meridian Reserve, Inc.), 87 F.3d 406, 409 (10th Cir. 1996) (further quotation omitted). And, "'when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue.'" LaHue, 261 F.3d at 1010 (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999)). The same applies to the claims of fellow class members on direct appeal.

We have emphasized that exceptions to this rule are rare:

> [W]e will depart from the law of the case doctrine in three exceptionally narrow circumstances: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.

Id. at 1010-11 (further quotation omitted).

-24-

In Integra I we directly considered and decided two major issues raised by the appellants here: "whether Fidelity provided adequate representation for the class members, and whether notice afforded to the appellants was adequate to satisfy the dictates of the Due Process Clause." Integra I, 262 F.3d at 1107.

The appellants urge that we reexamine those issues. They invoke the above-described exceptions to the law of the case rule, arguing that Devlin's holding on the right to appeal tainted all the issues we decided in Integra I, that, in any event, we only narrowly considered those issues, and that fundamental fairness dictates that we take a "fresh look" at the issues in question. Defendants-Appellant's Reply Br. at 21-22. We reject these arguments, as discussed below.

### 1. Adequacy of Fidelity's Representation

In seeking to avoid our holding in Integra I on the adequacy of Fidelity's representation, the appellants accuse the Integra I court of "failing to appreciate the seriousness" of the issue and treating it only narrowly. Defendants-Appellants' Br. at 48. In support they cite Wright & Miller's criticism of Integra I. 15A Charles Alan Wright, et al., Federal Practice and Procedure § 3902.1 at 105-06 & nn.6-7 (Supp. 2003). And, as indicated above, they also invoke the perceived impact of Devlin and manifest injustice.

In particular the appellants contend first that "Fidelity was not typical of the class members because it was the largest recipient of ShowBiz stock as a result of the Spin-Off and had sold those shares at a price [$37 per share] higher than practically all other class members." Defendants-Appellants' Br. at 46. Second, they argue that, as a large mutual fund, Fidelity's primary duties to its shareholders conflicted with the interests of the members of the class. Id. at 45-46. And, third, they assert that the agreement for the payment of Fidelity's attorneys' fees out of the settlement fund both created and demonstrated a conflict of interest as to members of the class. Id. at 47. In short, the appellants contend that Fidelity was not an adequate representative because it was atypical of members of the class and had irreconcilable conflicts, thus violating the requirements of Rule 23(a) and due process.

Each of those arguments, and others, regarding the adequacy of Fidelity's representation, were presented to and considered by us in Integra I. See Defendants-Appellants' Br. (Docket Nos. 99-1483, 99-1498 and 99-1523) at 33-38. We held, in part:

> Fidelity's purported conflicts did not render it inadequate to represent the class either at the beginning of the proceedings or at any later stage of the litigation. Although we recognize that Fidelity's potential liability far exceeded that of any other class member, its interests were aligned with those of the other class members in that all concerned wished to limit their liability to the lowest possible amount. Moreover, Fidelity's ownership of a large block of shares would have created a greater incentive to bring the

-26-

per-share costs of settlement down to the lowest possible level. For similar reasons, although Fidelity had fiduciary duties to its shareholders in addition to its responsibilities to the class, we do not believe those duties were in conflict because Fidelity's duty to each was vigorously to litigate the class issues and to reduce the class liability as much as possible.

Likewise the settlement agreement's provision for partial payment of Fidelity's expenses in litigating the suit, while potentially troubling, does not in and of itself render Fidelity inadequate. . . . .

In this case, the district court did not abuse its discretion in concluding that Fidelity remained an adequate representative notwithstanding that the settlement agreement created a pool to offset some of their litigation costs.

Integra I, 262 F.3d at 1112.

We are unpersuaded that Integra I either failed to consider and decide the issues on representation raised by the appellants here, or that Devlin compels us to revisit those issues, or, finally, that any sufficient basis exists to justify ignoring the law of the case established by Integra I: Fidelity was an adequate representative of the class.

## 2.    Whether Notice to the Class Members Satisfied Due Process

In Integra I we considered (1) whether the pre-certification notice that was given violated due process such that class certification following such notice was improper; (2) whether due process in the context of a defendant class requires that all class members receive actual notice; and (3) whether due process required that new notice of the class settlement be given after the opt-out provision was added

-27-

and before the fairness hearing took place. Integra I, 262 F.3d at 1108-11. Because the Appellants here focus their arguments on the second of these issues, we limit our discussion to whether Integra I's holding on that issue is the law of the case.

The Integra I appellants, like the Appellants here, argued that "all of the members of the defendant class are entitled to actual notice before they can be bound to a judgment." Id. at 1110. We rejected this argument, relying on the Supreme Court's holding that notice satisfies due process when it is "'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339, U.S. 306, 314 (1950)). We held that the notice given here satisfied that requirement, even though, for example, 1455 of the 6423 notices sent regarding the settlement fairness hearing were not actually received. Id. at 1110-11. We emphasized that the Integra I appellants had made "no showing . . . that some better method of notification offered a practicable means of notifying the class." Id. at 1111.

Appellants add little to the arguments of their fellow class members in Integra I. They suggest that, at least in regard to the final notice of the settlement, where the district court was aware that the prior notice of the hearing had failed to reach 1455 class members, "the district court should have required

-28-

greater efforts to reach [those] defendants." Defendants-Appellants' Br. at 52. In support of this claim, they cite one case in which the court had ordered the non-class party to remail notices that were returned by the postal service and to "retain an address research firm to research any returned notices that do not include a forwarding address." In re The Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 222 (D.N.J. 1991). That court, however, recognized that its notice instructions "far exceeded the requirements of Rule 23 and due process." Id. at 232. Here, while the district court did not require the use of an address research service after receiving the Trustee's report on the results of the hearing notice, it did order that notice of the settlement's approval be given by publication as well as by mail. In the absence of a showing by the appellants that another reasonable method of supplementing the Trustee's mailing list would have significantly increased the number of notices actually received, we adhere to Integra I's holding that the notice given satisfied due process.

In reaching this conclusion, we are cognizant of the concern that, in some isolated instances, individual class members may have a judgment entered against them without having received actual notice of the opportunity to raise objections or individual defenses before the expiration of the deadline for doing so. See also Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions §§ 4:70, :71 (4th ed. 2002) (raising the concern that defendant class members without notice may

be bound by a settlement even after the statute of limitations for the original claim has run). We are nonetheless persuaded to adhere to Integra I based on two of its points in particular. First, we recognized that imposing a requirement of actual notice to every class member would place an impossible constraint on defendant class action litigation. Integra I, 262 F.3d at 1110 (citing Mullane, 339 U.S. at 313-14). Second, we noted that individual class members may "challenge the binding effect of the settlement as to themselves in a collateral action." Id. at 1111 n.18; see 4 Newberg & Conte, supra, § 11:64. Based on these considerations, we see no basis for deviating from the law of the case doctrine with regard to the appellants' notice claims.

## C.

### Whether the Bankruptcy Court's Certification of this Action as a Defendant Class Action was Proper

We turn now to the first of the two major issues on the merits raised in this appeal and not previously considered in Integra I. The appellants contend that we must vacate the settlement agreement because it is based upon an erroneous class certification. We agree that the appropriateness of class certification lies at the heart of this case. Class action settlements are premised upon the validity of the underlying class certification. Moreover, a trial court overseeing a class action

retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment. See Fed. R. Civ. P. 23(c)(1).

We therefore reject the Trustee's argument that the bankruptcy court's certification order is unreviewable because it was interlocutory and thus was made moot by the settlement. Plaintiff-Appellee's Br. at 26. Rather, we hold that the appellants' objections to class certification at the settlement fairness hearing were "sufficient to preserve the right of the objectors to contest the class certification on appeal." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1145 (8th Cir. 1999); see also Namoff v. Merrill Lynch, Pierce, Fenner & Smith (In re Dennis Greenman Sec. Litig.), 829 F.2d 1539, 1542-43 (11th Cir. 1987) ("In order to preserve an appeal from a class settlement, a class member must, during the course of proceedings, object to either the terms of the settlement or to the nature of the class certification.") (citation omitted).

We review the bankruptcy court's certification of a defendant class pursuant to Rule 23(b)(1) for an abuse of discretion. J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287 (10th Cir. 1999). "There is no abuse of discretion when the trial court applies the correct criteria [under Rule 23] to the facts of the case." Id. (further quotation omitted). We reject the appellants' argument that the heightened scrutiny dictated by Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

-31-

620-21 (1997), for settlement-only certifications applies to this case since here, unlike in <u>Amchem</u>, the class was certified before settlement negotiations began and the designated class counsel acted as the negotiator for the class. <u>See Petrovic</u>, 200 F.3d at 1145-46.

Under Rule 23, a trial court determining whether class certification is appropriate must first find that a proposed class meets the four prerequisites of numerosity, commonality, typicality, and fair and adequate representation set forth in Rule 23(a).[3] Of these, Appellants challenge only the fourth, claiming that Fidelity and its counsel failed to "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). As we determined above, the law of the case doctrine applies to and resolves the issue of Fidelity's adequacy as a class representative.

Rule 23 also requires the trial court to find that the plaintiff's claim is maintainable as a class action under one of the three categories of suits described

---

[3]**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

in Rule 23(b).[4]  Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988).  Here, as indicated above, the bankruptcy court, on motion of the Trustee, concluded that the Trustee's claim could be maintained under either (b)(1) or (b)(3) and certified a defendant class of spinoff shareholders under (b)(1).  In re Integra Realty Res., Inc., 179 B.R. at 272.

Appellants argue this was error, and the defendant class should have been certified under 23(b)(3), which allows class members to opt out of the class, rather than 23(b)(1), which requires no such opt-out right.[5]  They maintain that

---

[4]**(b) Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    (1) the prosecution of separate actions by or against individual members of the class would create a risk of

        (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

        (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

    . . . . .

    (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b).

[5]**(c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.**

    . . . .

    (2) In any class action maintained under subdivision (b)(3), the

(continued...)

-33-

had the class been certified under (b)(3), Fidelity would have been in a stronger bargaining position vis-a-vis the Trustee when negotiating the settlement. The question, then, is whether the bankruptcy court applied the correct criteria when it determined that 23(b)(1) was the most appropriate category for class certification in this case.

The appellants and the Trustee are at odds in regard to which subsection of Rule 23(b)(1)[6] the bankruptcy court applied. The appellants strongly assert that the bankruptcy court applied subsection (A), evidently believing that certification under subsection (A) would clearly be improper for a suit seeking to recover

---

[5](...continued)
court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; . . .

Fed. R. Civ. P. 23(c)(2).

[6]Subsection (1)(A) focuses on the risk of separate adjudications to the nonclass party, here the Trustee, and is satisfied when separate actions would result in "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Subsection (1)(B) focuses on the risk of separate actions to the individual potential class members, here the spinoff shareholders, and applies when "adjudications [against] individual members of the class . . . would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B); see 7A Wright, et al., supra, §§ 1773, 1774 (2d ed. 1986).

monetary damages. However, the bankruptcy court failed to specify which subsection of (b)(1) it was applying. Rather, the court's language suggests that it considered both subsections applicable.[7] We conclude that the bankruptcy court certified the class under both subsection (A) and subsection (B) and may therefore uphold the certification under either subsection.

We uphold the bankruptcy court's certification under subsection (B) rather than under subsection (A). A widely-recognized limitation on (b)(1)(A) certification requires that there be "more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action." Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc., 158 F.R.D. 681, 687 (D. Kan. 1994); see 2 Newberg & Conte, supra, § 4:4. Here, it is not clear that recovery of some ShowBiz shares but not others would require the Trustee to fulfill mutually

---

[7]Compare In re Integra Realty Res., Inc.,179 B.R. at 271 (invoking subsection (A)'s concern with the effect of failing to certify on the non-class party by comparing the case here to a prior non-class action where "differing interpretations of the law assured a right of recovery by the trustee in some cases and denied it against other defendants who were similarly situated"); with id. (invoking subsection (B)'s concern with the effect of failing to certify on potential class members by noting that if it did not certify a class, "a judge in a later case could be constrained by stare decisis to apply previously adopted rules to different defendants," with the result that "as a practical matter the first suit could be dispositive of the class interests"); id. at 272 (concluding that "[c]lass certification will assure that the rights of absent parties are adequately protected and not summarily dealt with by the application of stare decisis from a case to which they were not a party").

conflicting obligations. Because we are uncertain regarding the applicability of subsection (A) to this case, we turn to review the bankruptcy court's certification under subsection (B).

We hold that the bankruptcy court properly certified the class under Rule 23(b)(1)(B), based on the court's conclusion that, in the absence of class certification, the Trustee's first suit against a defendant or group of defendants could be dispositive of all remaining suits. This first suit would thus decide the rights of absent shareholders without the class action's assurance that they be adequately represented.

We believe that the particular context of this case distinguishes it from that in which the First Circuit recently held, agreeing with the "vast majority of courts confronted with the question," that "the certification of a class under Rule 23(b)(1)(B) cannot rest solely on an anticipated stare decisis effect." Tilley v. TJX Cos., 345 F.3d 34, 42 (1st Cir. 2003). The First Circuit reasoned that if the "mere possibility" of a stare decisis effect on future actions were sufficient to justify a (b)(1)(B) class, "it would render the other categories under Rule 23(b) superfluous" because Rule 23(a)(2) already requires that all class actions have "questions of law or fact common to the class." Id. at 41-42.

Here, we are convinced that litigation of the Trustee's fraudulent transfer and unlawful dividend claims against one defendant shareholder would present

more than the "mere possibility" of a stare decisis effect on future defendants. For one thing, the issue of whether the ShowBiz spinoff constituted a fraudulent transfer or an unlawful dividend is entirely independent of the identity of the defendant shareholder. There is no allegation that any of the shareholders participated in any fraudulent or unlawful activity. As a mere passive recipient of the ShowBiz stock, a defendant here has only a small number of possible individual defenses, such as the claim that he only acted as a conduit for the actual recipients of the stock, or that he had a smaller number of shares than alleged. In such circumstances, a court's conclusions regarding the primary legal and factual issues in the first case would not only form the basis for the application of stare decisis in subsequent cases; they would almost inevitably prove dispositive in those cases. See Lynch Corp. v. MII Liquidating Co., 82 F.R.D. 478, 483 (D.S.D. 1979) (certifying defendant class of shareholders under (b)(1)(B)); Guy v. Abdulla, 57 F.R.D. 14, 18 (N.D. Ohio 1972) (holding that (b)(1)(B) certification of a defendant class is appropriate for the purpose of deciding common issues in a bankruptcy trustee's action to recover voidable preferences and fraudulent conveyances).

Also significant is the fact that, were the Trustee to proceed against the defendants individually rather than as a class, he would likely do so in a single forum, the Bankruptcy Court of the District of Colorado, pursuant to that court's

-37-

jurisdiction under 28 U.S.C. § 1334. This probability further increases the likelihood that the first case would prove dispositive.

Appellants argue that "due process requires the provision of opt-out rights in a money damages class action," and that therefore the bankruptcy court's certification of a mandatory (non-opt-out) (b)(1) class is inappropriate in this case. Defendants-Appellants' Br. at 40. For this proposition Appellants rely on the Supreme Court's decision in Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985), which addressed the due process rights of absent plaintiff class members as to whom the forum state court lacked personal jurisdiction. The question remains open as to class actions in federal court. See Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994) (dismissing a writ of certiorari as improvidently granted and thus refraining from deciding whether an opt-out right in monetary damages cases in federal court was constitutionally required). Moreover, Shutts expressly limited its holding "to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments." Shutts, 472 U.S. at 811 n.3 (emphasis added). The Ninth Circuit's Brown decision, applying Shutts to federal court actions, also dealt with a plaintiff class. Brown v. Ticor Title Ins. Co., 982 F.2d 386, 392 (9th Cir. 1992), cert. dismissed, Ticor Title Ins. Co. v. Brown, 511 U.S. 117 (1994). Essentially, these decisions allow potential plaintiffs to take their chances in regard to whether a class action

or an individual suit would be most effective in maximizing the amount of damages they might recover.

Regardless of whether Shutts' reasoning would apply in the general context of defendant class actions in federal court where the plaintiff seeks primarily monetary damages, we do not think it applies here. "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" Bowen v. Massachusetts, 487 U.S. 879, 893 (1988). The Trustee's action, under § 550 of the Bankruptcy Code, was an attempt to "recover . . . property transferred, or if the court so orders, the value of such property." 11 U.S.C. § 550(a). This provision "[n]owhere . . . speak[s] in terms of 'liability' for a wrongful act or in terms of 'money damages.'" Branch v. F.D.I.C., 825 F. Supp. 384, 419 (D. Mass 1993). "'The legislative theory'" in such an action "'is cancellation [of the transfer], not the creation of liability for the consequences of a wrongful act.'" Id. (quoting Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 738 (1st Cir. 1982)).

This distinction is relevant for our due process analysis because, unlike the typical class action damage case, where "the individual circumstances of each class member are typically of material importance," it is "virtually never the case" that the proceeds of a single fraudulent transfer or unlawful dividend would be recoverable from one defendant shareholder but not from another. Turner v.

Bernstein, 768 A.2d 24, 33 (Del. Ch. 2000). This is certainly true here because the Trustee's right to recover the ShowBiz stock or its value depends entirely on the propriety of Integra's spinoff under applicable bankruptcy and other law. The culpability of individual defendants is of no consequence in this analysis. In the event that a court had declared the spinoff a fraudulent transfer or unlawful dividend, judgment against each defendant would be calculated according to "a common formula or guideline," 2 Newberg & Conte, supra, § 4:49, based on the amount of ShowBiz stock each defendant had received, and subject only to limited individual defenses, which are not waived as a result of class certification. In such a context, certification of a mandatory defendant class does not violate due process as long as the class is adequately represented. Hansberry v. Lee, 311 U.S. 32, 43 (1940). We thus hold that in the circumstances of this case, certification of a mandatory defendant class was not barred simply because the Trustee sought to recover the ShowBiz stock or its monetary value.

Consequently, as indicated above, we conclude that the bankruptcy court did not abuse its discretion by certifying a mandatory defendant class under Rule 23(b)(1)(B) rather than an opt-out class under Rule 23(b)(3). The court's decision was in accord with a general preference for certifying defendant classes under 23(b)(1) or (b)(2) rather than (b)(3) in order to promote judicial economy and prevent the class action device from becoming ineffective as a result of numerous

-40-

opt-outs by individual defendants. See 2 Newberg & Conte, supra, § 4:64.

Because we uphold the bankruptcy court's 23(b)(1)(B) certification, we need not

reach the issue of whether settlement negotiations were prejudiced by the alleged

inappropriate certification.

## D.

## Whether the Settlement Was Fair, Reasonable, and Adequate

Appellants also challenge the fairness, reasonableness, and adequacy of the

settlement agreement itself. The district court approved the settlement agreement

as fair, reasonable, and adequate based on the four factors outlined in Jones v.

Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984). The court found that

(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual

questions placed the litigation's outcome in doubt, (3) the immediate recovery

was more valuable than the mere possibility of a more favorable outcome after

further litigation, and (4) the Trustee and Fidelity believed the settlement was fair

and reasonable. Appellants' App. Vol. 3 at 837.

We review a district court's approval of a class action settlement agreement

for an abuse of discretion. Rutter & Wilbanks Corp., 314 F.3d at 1186. We will

not disturb the district court's approval "absent a distinct showing it was based on

-41-

a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Id. at 1187 (further quotation omitted).

We first address the appellants' claim that the terms of the settlement are excessive. Essentially, the appellants argue that the settlement, by requiring defendant class members to pay up to $7 per share of ShowBiz stock, is inherently unfair because even if the Trustee could have succeeded in litigation on the merits, the maximum amount he could have recovered was $5.50 per share. In other words, they contend that the value of the ShowBiz stock, for purposes of 11 U.S.C. § 550(a), could not be more than its price at the time of the spinoff. We reject the appellants' argument because, as discussed below, the amount actually recoverable by the Trustee if he had prevailed on the merits is far from clear.

In the case of a fraudulent transfer, § 550(a) allows a bankruptcy trustee to recover "the property transferred, or if the court so orders, the value of such property." 11 U.S.C. § 550(a). "'Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'" Hirsch v. Steinberg (In re Colonial Realty Co.), 226 B.R. 513, 525 (Bankr. D. Conn. 1998) (quoting Hirsch v. Gersten (In re Centennial Textiles, Inc.), 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998)). Normally this is achieved by allowing the trustee to recover the actual property transferred. See id. However, where the

property is unrecoverable, "courts allow the trustee to recover the value of the property." Id.

This is where the difficulty in our case begins because § 550(a) "'does not define "value," nor indicate at what time "value" is to be determined.'" Id. (quoting Gennrich v. Montana Sport U.S.A., Ltd. (In re Int'l Ski Serv., Inc.), 119 B.R. 654, 658 (Bankr. W.D. Wis. 1990)). The court in In re Colonial identified as a general rule that "the market value of the property at the time of transfer, less the consideration received, is the proper measure of recovery under § 550." Id. It thus rejected the trustee's argument that the bankruptcy estate should recover the appreciated value of transferred stock.

Our own review of fraudulent transfer cases has revealed no such general rule, however, particularly where the property in question has, as here, appreciated since the time of the transfer. The cases cited by In re Colonial and by the appellants in support of this rule all deal with instances where the transferred property had decreased in value since the time of the transfer. See Kepler v. Sec. Pac. Hous. Servs. (In re McLaughlin), 183 B.R. 171, 176-77 (Bankr. W.D. Wis. 1995); Shape, Inc. v. Midwest Eng'g (In re Shape, Inc.), 176 B.R. 1, 3 (Bankr. D. Me. 1994); Official Creditors Comm. v. Agri Dairy Prods., Inc. (In re James B. Downing & Co.), 74 B.R. 906, 911 & n.6 (Bankr. N.D. Ill. 1987). The rationale behind the rule in those cases is to avoid the inequity to the

bankruptcy estate that would result if the court ordered the return of the actual property at issue. See Tidwell v. Chrysler Credit Corp. (In re Blackburn), 90 B.R. 569, 573 (Bankr. M.D. Ga. 1987) ("Because of the depreciable nature of the property involved [here], the Court finds that Trustee is entitled to recover the value of the property at the time of transfer."). As the In re Colonial court recognized, "'the proper focus in [§ 550(a)] actions is not on what the transferee gained by the transaction, but rather on what the bankruptcy estate lost as a result of the transfer.'" In re Colonial Realty Co., 226 B.R. at 525 (quoting Gill v. Maddalena (In re Maddalena), 176 B.R. 551, 557 (Bankr. C.D. Cal. 1995)). Rather than In re Colonial's rule, we believe the only generally applicable rule in regard to § 550(a) valuation is that "the time at which the value is measured depends upon the circumstances of each individual case." Pritchard v. Brown (In re Brown), 118 B.R. 57, 60 (Bankr. N.D. Tex. 1990) (quoting In re Blackburn, 90 B.R. at 573 (citing 4 Collier on Bankruptcy ¶ 550.02 n.6 (15th ed. 1987))).

Cases in which the value of transferred property appreciated after the transfer are rare. We are aware of only one case other than In re Colonial dealing with such circumstances, and there the bankruptcy court ordered the return of transferred stock that had appreciated since the transfer. Cooper v. Ashley Communications, Inc. (In re Morris Communications NC Inc.), 75 B.R. 619, 629 (Bankr. W.D.N.C. 1987), rev'd on other grounds by Cooper v. Ashley

-44-

Communications, Inc. (In re Morris Communications), 914 F.2d 458 (4th Cir. 1990).

We therefore reject the appellants' assertion that the settlement imposed a cost on shareholders higher than they would ever have to pay if the case proceeded in litigation. As charted in Fidelity's memorandum to the district court in support of the settlement agreement, the value of ShowBiz shares on the stock market since the time of the spinoff ranged from approximately $5.50 to $101.25 per share. Appellants' App. Vol. 4 at 1367. If the lower courts had held that the spinoff constituted a fraudulent transfer or unlawful dividend, defendant class members may have been ordered to return their stock. Alternatively, they may have been ordered to pay an amount somewhere between $5.50 and $101.25 per share. The only way to determine precisely what the outcome would have been was to litigate the case to conclusion (which, we note, defendant class members had the option of doing by opting out of the settlement). We therefore conclude that the terms of the settlement, limiting the Trustee's recovery to the lesser of $7 per share or the amount for which the stock was ultimately sold, are not inherently unfair.

The appellants' remaining arguments revolve around the form of the district court's opinion. The appellants argue that the district court "did not adequately support its approval of the Settlement" by explaining the reasons for its approval

and for its rejection of the objections that were raised. Defendants-Appellants' Br. at 54-55 (citing Maher v. Zapata Corp., 714 F.2d 436, 455 (5th Cir. 1983)). To be sure, "'a reviewing court [must] have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.'" Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968)). However, while more extensive explanation by the district court may have been helpful to our review, we will not overturn the district court's decision on the basis of a "merely formal" deficiency as long as the decision finds support in the record. Protective Comm., 390 U.S. at 437.

The bulk of the appellants' arguments contesting the settlement's fairness concern the district court's alleged failure to take into account various issues and facts in its holding. These include Fidelity's alleged conflict of interest, the propriety of class certification, the likelihood of defendants' success in litigation based on the defenses raised in the preliminary dispositive motion, the Trustee's prior settlement with Hallwood and Hallwood's consequent release from liability related to the spinoff, and the number of objections to the settlement. All of these arguments essentially restate the appellants' contention that the district court

erred by failing to explain its holding in sufficient detail, with reference to these facts and issues. We agree with the appellants that all of these factors should have been part of the mix in the district court's consideration of the settlement's fairness. However, for the same reasons explained above, we disagree that the district court's failure to refer to these factors in its order constitutes definitive proof that it failed to consider them in reaching its decision.

The district court claimed, in its order and final judgment, to have considered all prior proceedings in the case and all objections and submissions that were made in connection with the proposed settlement, and, in the absence of evidence to the contrary, we assume that it did so. Appellants' App. Vol. 3 at 836. The materials before the district court included the memoranda in support of the settlement submitted by both the Trustee and Fidelity, each of which were supplemented by substantial evidentiary appendices that focused primarily on the history of Integra, its involvement with Hallwood, and the factual details of the spinoff; Integra's financial condition before and after the spinoff; the fluctuating value of ShowBiz stock after the spinoff; and the bankruptcy court's approval of Integra's reorganization plan. The materials also included all written objections to the settlement. At the settlement fairness hearing, the district court heard from the Trustee's counsel and Fidelity's counsel in support of the settlement, then heard objections presented by Mr. Greenbaum, an attorney appearing on his own

behalf, and Walton Bader, representing a number of defendant class members, and also heard individual issues raised by a number of other attorneys and pro se defendants. Appellants' App. Vol. 3 at 699-792. The district court also had before it the bankruptcy court's prior opinions on class certification and Fidelity's preliminary dispositive motion. The record thus indicates that the district court was aware of all the issues that appellants now argue should have been considered when determining the settlement's fairness.

Having carefully reviewed the record, in light of the four Jones factors listed above, we believe that the district court did not abuse its discretion by approving the settlement. What is clear from the record is that this litigation involved a number of contentious issues that could not have been decided on the merits without extensive further proceedings. We are unwilling to overturn the settlement of this drawn-out case based on the mere possibility that Fidelity and the defendant class could have prevailed, or that Hallwood could have been forced to indemnify all defendant class members,[8] if the case had been tried to its conclusion.

---

[8]As we noted in Integra I, we express no opinion in regard to whether the Trustee's settlement with Hallwood prevents defendant class members from seeking indemnification from Hallwood. 262 F.3d at 1097 n.3.

**E.**

**Whether the Bankruptcy Court Erred**
**by Denying Fidelity's Dispositive Motion**

In their final argument, the appellants urge us to review the bankruptcy court's denial of Fidelity's dispositive motion and conclude that the court's legal conclusions were in error. Such a review would require us to consider the merits of the ShowBiz shareholders' legal arguments in regard to the Trustee's fraudulent transfer and unlawful dividend claims. The lower courts never reached a final judgment on these issues. Rather, the case has now been resolved, as far as these appellants are concerned, by a settlement agreement, which takes the place of a final judgment on the merits. Significantly, the settlement agreement itself does not preserve the rights of settling parties to appeal the merits of the case. We believe that allowing settling parties to appeal the merits, after the settlement agreement has been upheld, would effectively negate the presumed intent of the settling parties to end their litigation without reaching the merits. We therefore hold that the appellants' claims in regard to the dispositive motion are moot. See 13A Wright, et al., supra, § 3533.2, at 233 (2d ed. 1984) ("Settlement moots an action. . . ."). Here, had the appellants wished to preserve their right to appeal the bankruptcy court's denial of the dispositive motion, they could have done so by opting out of the settlement and receiving a judgment on the merits in the district court.

## CONCLUSION

For the foregoing reasons, the decision of the district court upholding the settlement agreement is AFFIRMED.