**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MILTON HARPER; RONNIE
STEVENSON; JONATHAN MITCHELL,
individuals, on behalf of themselves, and
on behalf of all persons similarly situated,

    Plaintiffs - Appellees,

v.

C.R. ENGLAND, INC., a corporation,

    Defendant - Appellee.

------------------------------

WILLIAM H. GRADIE; SANG KIM;
WILLIAM BORSCHOWA; TONY RUIZ;
ROMI FRANCESCU,

    Objectors - Appellants.

No. 17-4008
(D.C. No. 2:16-CV-00906-DB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

A group of current and former truck drivers brought this wage-and-hour class

action against C.R. England, Inc. (CRE)—a national provider of transportation

services—contesting the legality of its piece-rate payment system and training

---

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

programs. The parties reached a settlement agreement, which the district court (after certifying the class) approved over some class members' objections. Those class members appealed, contesting class certification and challenging the settlement's contents. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the district court's class certification and remand for further proceedings. Having no certified class, we don't reach the merits of the settlement.

## BACKGROUND

This case involves two class actions. We lay out the procedural history of each before turning to the underlying claims. Then we address the settlement agreement and the facts that brought the case to us.

## I. Procedural History

### A. *Harper v. CRE*

In February 2016, Milton Harper sued CRE in California state court on behalf of himself and a putative class. In April 2016, Harper filed a First Amended Complaint, adding Ronnie Stevenson and Jonathan Mitchell as named plaintiffs (collectively, the Plaintiffs), and adding a claim. After this, CRE and the Plaintiffs agreed to enter into mediation.

In July 2016, the Plaintiffs filed a Second Amended Complaint, adding ten claims. This final complaint included fourteen claims: (1) unlawful, unfair, and deceptive business practices; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide accurate, itemized wage statements; (5) failure to maintain copies of accurate, itemized wage statements; (6) failure to reimburse for

business expenses; (7) unlawful deductions; (8) failure to provide off-duty meal periods or to pay meal-period premiums; (9) failure to provide off-duty rest periods or to pay rest-period premiums; (10) failure to pay wages on time; (11) failure to pay wages on regularly scheduled paydays; (12) misrepresentation; (13) usury; and (14) violation of the Private Attorneys General Act, Cal. Lab. Code § 2698 (West 2018). Claim three and claims five through thirteen weren't pleaded in the First Amended Complaint.

On August 24, 2016, CRE removed the action from state court to the United States District Court for the Central District of California under the Class Action Fairness Act. CRE filed a Notice of Pendency of Other Actions, informing the Central District of California that the case involved the same subject matter as four later-filed wage-and-hour class actions then pending in various other courts.

Next, the Plaintiffs and CRE stipulated to transfer the case to the United States District Court for the District of Utah (the district court).

Preparing for mediation, the parties engaged in informal discovery; CRE provided documents and information related to the Plaintiffs' claims.

On August 19, 2016, CRE and the Plaintiffs engaged in mediation with an experienced mediator, Gig Kyraciou. The parties negotiated all day. And after Kyraciou made a mediator's proposal, the parties reached agreement. On August 30, 2016, the parties notified the court that they planned to settle. They incorporated the details in a Joint Stipulation for Preliminary Approval of Class Action Settlement, filed October 3, 2016.

The settlement would resolve all the claims asserted in the *Harper* action, as well as any other claims arising out of the same facts, allegations, transactions, or occurrences during the class period.[1] This settlement would thus end another action brought by an unnamed class member, whose claims' procedural history we turn to now.

**B.** *Gradie v. CRE*

On April 20, 2016 William H. Gradie filed suit against CRE in California state court on behalf of himself and a putative class. The complaint alleged ten claims, all stemming from CRE's employment practices. The ten claims were: (1) unlawful deductions from wages; (2) unpaid minimum and overtime wages; (3) misrepresentation; (4) failure to provide off-duty meal breaks or premium pay; (5) failure to provide off-duty rest breaks or premium pay; (6) failure to provide accurate, itemized wage statements; (7) failure to provide timely wage payments; (8) usury; (9) unlawful and unfair business practices; and (10) violation of the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 (West 2018).

CRE removed this case to the United States District Court for the Central District of California; it too was then transferred to the United States District Court for the District of Utah. *See Gradie v. C.R. England, Inc.*, No. 2:16-CV-001015-DN, 2017 WL 325201, at *1 (D. Utah Jan. 23, 2017). On October 11, 2016, after having reached agreement with the *Harper* plaintiffs, CRE moved to stay all proceedings in

---

[1] The class period ran from March 12, 2014 through October 6, 2016.

the *Gradie* action. The district court agreed, staying the case pending the exhaustion of all appellate rights in *Harper*.

## II. The Class Claims

By the time of the settlement, the *Harper* and *Gradie* claims mostly overlapped. The claims belong to two categories: the wage claims and the contract claims. We briefly discuss each in turn.

### A. The Wage Claims

Both the *Harper* and *Gradie* complaints contest the legality of CRE's piece-rate compensation method. Under this system, drivers were paid a per-mile rate. But, naturally, drivers did things other than just drive: "class members were also required to spend a substantial number of hours engaged in non-driving tasks such as completing paperwork, pre and post trip inspections, and waiting to pick up trucks or to load and unload freight." Objectors' Opening Br. at 8. So, the *Harper* and *Gradie* actions claim, the drivers weren't paid for non-driving time, which allegedly violated a number of California labor codes requiring the payment of minimum and overtime wages, the provision of accurate, timely wage statements, and the provision of meal and rest periods. The drivers demanded compensation for the unpaid time, premiums for unpaid meal and rest periods, and applicable penalties under various California statutes.

### B. The Contract Claims

The original *Harper* complaint and the First Amended Complaint didn't include the contract-claim allegations. But the Second Amended Complaint, filed on

5

July 11, 2016, did. The *Gradie* complaint, filed April 20, 2016, contained these claims from the beginning.

This second set of claims arose from the Education and Employment Contract that the *Harper* and *Gradie* plaintiffs claim some drivers signed. The drivers alleged that CRE forced some drivers to sign the contract, which, they argued, illegally charged them for training costs and had an illegal liquidated-damages clause and a usurious interest rate. The drivers sought compensation for the illegally charged business expenses.

## III.    The Settlement

Under the proposed settlement agreement, CRE agreed to make a payment of $2,350,000 to resolve all of the claims asserted in the *Harper* action, as well as any other claims arising out of the same facts, allegations, transactions, or occurrences during the class period. This covered the *Gradie* claims. The joint stipulation for preliminary approval also included the option for CRE to make a payment to class members under Cal. Lab. Code § 226.2(b), which gave violators of California's minimum-wage and rest-period obligations the option of making payments to those impacted in return for an affirmative defense against liability. Under the statute, the defense had to be perfected by December 15, 2016. Cal. Lab. Code § 226.2(b) (West 2018).

As part of the proposed settlement agreement, the Plaintiffs and CRE provided the district court with (1) a proposed Class Notice; (2) a proposed Order Granting Preliminary Approval of Class Settlement; and (3) a proposed Order Confirming

6

Certification of the Class Action for Settlement Purposes, Granting Final Approval of the Class Action Settlement, and Entering Final Judgment.

On October 6, 2016, the district court issued a preliminary approval order certifying the class for purposes of settlement under Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3) (allowing class certification when questions of law or fact common to class members predominate and a class action is superior to other available methods). The order also established requirements for objection. It expressly provided that "[a] Class Member who does not serve a written objection in the manner and by the deadline specified above will be deemed to have waived any objection and will be precluded from making any objection to the Settlement." Appellants' App. vol. 2 at 479.

On October 14, 2016, the settlement administrator mailed a class notice to known class members. The notice informed class members about their settlement options. They could choose to (1) "[d]o nothing" and stay in the class, (2) "[s]ubmit a written request for exclusion from the Settlement" (and therefore retain the right to act individually), (3) "[o]bject" and "[w]rite to the Court and explain any concerns," or (4) attend the court's planned fairness hearing to "[r]equest to speak to the Court about the fairness of the Settlement." Appellants' App. vol. 4 at 780. Under the header "CRITICAL DATES," the notice informed potential class members that November 14, 2016 was "[t]he last date to submit a written request to opt out of the Settlement and retain your rights to bring your own claim" as well as "[t]he last date to mail any written objections to the Settlement." *Id.* It further notified them that

7

November 29, 2016, was "[t]he date of the Court hearing [(the fairness hearing)] to determine whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court." *Id.* The notice also briefly described the background of the case, summarized the proposed settlement, described the class members' rights, and discussed the settlement's effect.

Some class members, including Gradie, timely opted out of the settlement. On November 14, 2016, Gradie, Sang Kim, William Borschowa, Tony Ruiz, and Romi Francescu (collectively, the Objectors) filed a motion to intervene in the case.[2] The next day—one day past the deadline to do so—the Objectors filed their objections to the proposed settlement.

As planned, on November 29, the court held the fairness hearing. The Plaintiffs, the Objectors, and CRE were all represented. The court heard the Objectors' concerns about the settlement's fairness, and also heard CRE's and the Plaintiffs' defense of the settlement.

On December 12, 2016, the district court issued a memorandum and order overruling the Objectors' objections, granting approval of the class settlement, and awarding attorney's fees. *Harper v. C.R. England, Inc.*, No. 2:16-CV-906-DB, 2016 WL 7190560, at *4 (D. Utah Dec. 12, 2016). In that order, the district court

---

[2] The district court later denied that motion for failing "to meet the requirements of either intervention as of right or permissive intervention." *Harper v. C.R. England, Inc.*, No. 2:16-CV-906-DB, 2016 WL 7190560, at *2 (D. Utah Dec. 12, 2016). The failed intervention isn't at issue on appeal.

8

determined that the objections weren't timely. *Id.* As it noted, "[n]evertheless, the court heard argument from the [Objectors] at the November 29th hearing" and "considered each of the[ir] arguments." *Id.* Analyzing those objections, the district court found them meritless, determining that the settlement was fair, reasonable, and adequate. *Id.* at *3–4. In doing so, the court considered (1) whether the settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact existed that would place the outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighed the possibility of future relief after protracted and expensive litigation; and (4) whether the parties adjudged that the settlement is fair and reasonable. *See id.* at *3; *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (laying out the four-factor test). The court concluded that each factor was met. *Harper*, 2016 WL 7190560, at *3. The court also awarded attorney's fees to the class counsel. *Id.* at *4.

In a later order, the district court confirmed the certification of the class for settlement purposes, granted final approval of the class-action settlement, and entered final judgment.[3] In its order, the court concluded that, for settlement purposes only, the class had satisfied Rules 23(a) and 23(b)(3). And the district court noted that, for classes certified solely to effectuate a settlement, the court needn't address Rule

---

[3] By this time, CRE could no longer take advantage of the safe-harbor affirmative defense.

23(b)(3)'s manageability requirement. The Objectors timely appealed, challenging the class certification and the settlement's fairness.

## DISCUSSION

We first address CRE's and the Plaintiffs' arguments that Gradie specifically, and the Objectors generally, lack standing to bring this appeal. Then we turn to the Objectors' challenges to class certification.

## I. Standing

We have an independent obligation to examine our own jurisdiction, and "standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *Integra Realty Res., Inc. v. Fidelity Capital Appreciation Fund*, 262 F.3d 1089, 1101 (10th Cir. 2001) (*Integra I*) (alteration in original) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). We review standing de novo. *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1210 (10th Cir. 2014).

### A. Gradie's Standing

CRE and the Plaintiffs claim that because Gradie opted out of the settlement, he lacks standing to object to it.

They're right. Opted-out class members lack standing to object to a settlement. *Integra I*, 262 F.3d at 1102 ("[N]on-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class." (alteration in original) (quoting *Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992))). We do recognize an exception to this general rule when a nonsettling party demonstrates that it will be prejudiced by a settlement. *Id.*

10

But Gradie hasn't alleged prejudice, and so we won't address it. Gradie's lack of

standing doesn't impact the remaining Objectors (Kim, Borschowa, Ruiz, and

Francescu), whose appellate rights we turn to next.[4]

## II. The Objectors' Right to Appeal

CRE and the Plaintiffs argue that because the Objectors filed their objections

one-day late, they can't appeal the settlement agreement.

"[O]nly parties to a lawsuit, or those that properly become parties, may appeal

an adverse judgment." *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (quoting *Marino v.*

*Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)). And as the Supreme Court explained

in *Devlin*, nonnamed class members who objected to the approval of a class-action

settlement at the fairness hearing are parties for purposes of appeal without

intervening in the case. *Id.* at 14. In *Integra Realty Resources, Inc. v. Fidelity Capital*

*Appreciation Fund*, 354 F.3d 1246, 1257–58 (10th Cir. 2004) (*Integra Realty II*), we

determined that objectors who file untimely or procedurally deficient objections

haven't properly objected at the fairness hearing, and so don't qualify for appellate

rights under *Devlin*.

Arguing that the Objectors have no right to bring this appeal, CRE and the

Plaintiffs rely on *Integra Realty II* for the proposition that a late objection defeats the

delinquent Objectors' standing. True, in *Integra Realty II*, we denied appellate rights

---

[4] We will continue to use "Objectors" to refer to Kim, Borschowa, Ruiz, and Francescu.

11

to an individual who hadn't complied with the district court's objection requirements. 354 F.3d at 1257–58 (concluding that objector who did "not meet the district court's stated requirements for objecting at the fairness hearing" didn't have a right to appeal); *see also In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1112 (10th Cir. 2017) (declining to address objections to settlement agreement when the objecting party "failed to comply with the district court's notice requirements").

But CRE and the Plaintiffs ignore an important part of *Integra Realty II*: We separated the question of whether an untimely objector can appeal from that objector's Article III standing to proceed. 354 F.3d at 1256 ("[W]hether a class member can appeal from a district court's approval of a class settlement is not [a question] of Article III jurisdiction or of prudential standing . . . ."). So, despite the labeling by the parties, we see no standing concern here—the issue is better described "in terms of 'the right to appeal.'" *Id.* (quoting *Devlin*, 536 U.S. at 7).

"Rather, the issue is 'whether [the appellants] should be considered a "party" for the purposes of appealing the approval of the settlement.'" *Id.* (alteration in original) (quoting *Devlin*, 536 U.S. at 7). "The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id.* (quoting *Devlin*, 536 U.S. at 10). So whether the Objectors are properly a party to the settlement is an issue of discretion—not jurisdiction.

We decline to exercise that discretion against the Objectors when they filed their objection only one day late,[5] and when the district court (despite concluding that the Objectors had filed out of time) considered and addressed the Objectors' claims, creating a clear appellate record. *Harper*, 2016 WL 7190560, at *4; *see also Tennille v. W. Union Co.*, 785 F.3d 422, 429–30 (10th Cir. 2015) (exercising discretion to consider arguments on appeal that "were before the district court in some form").

Having concluded that the Objectors have the right to appeal, we now turn to the question of class certification.

## III. Class Certification

We review de novo whether a district court has applied the correct standard in making its Rule 23 determination and we review for an abuse of discretion the merits of that determination. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quoting *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009)). "[A]t the class certification stage a district court must generally accept the substantive, non-conclusory allegations of the complaint as true." *Vallario*, 554 F.3d at 1265.

The Objectors claim that the district court erred in certifying the settlement class.

---

[5] The Class Action Notice identified November 14, 2016 as the last day to mail any written objection. The Objectors electronically filed their objections the next day, November 15. So, practically speaking, it's likely the court had access to the document earlier than it would have had the Objectors timely mailed it. We see no need to deny court access on such a razor-thin difference.

Rules 23(a) and 23(b) "set forth clear, stringent guidelines for certification of a class action." *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 435 (10th Cir. 1978). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)); *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (The court must "carefully apply the requirements of Rule 23(a)." (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982))).

Under Rule 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if":

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more succinctly dubbed numerosity, commonality, typicality, and fair and adequate representation.

When the court determines that a potential class meets the threshold requirements, "it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988); Fed. R. Civ. P. 23(b). The third category, a Rule 23(b)(3) class—used here—can be certified only when "the questions of law or fact common to class members predominate over any questions affecting only individual members" and

14

when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) then lays out four matters to consider before certifying such a class:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

As the district court noted, when certifying a class for settlement purposes, Rule 23(b)(3)(D)—whether the proposed class would present intractable management problems—is irrelevant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "But other specifications of [Rules 23(a) and (b)] . . . demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*; *see also id.* at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement-class context.").

So, we ask, did the district court abuse its discretion by determining that the proposed class satisfied Rule 23? The Objectors argue that it did, focusing on Rule 23(a)(3)'s typicality requirement. They claim that the Plaintiffs weren't party to any of the contract claims—those arising out of the Education and Employment

15

Agreement. The Objectors claim that Rule 23(a)'s typicality requirement isn't met because the Plaintiffs "did not assert any claims arising out of this Education and Employment Agreement in their original or First Amended Complaint." Objectors' Opening Br. at 47. Instead, the Objectors argue that the Plaintiffs added these claims "by joint agreement of the parties in preparation for their settlement." *Id.*. And they claim that the Plaintiffs never submitted any "declaration or other admissible evidence" to show that the Plaintiffs actually "had viable claims" under the contract theories of liability. *Id.*

The Objectors also point out that "the district court made no finding whatever as to whether the Harper Plaintiffs met the[] requirements of Rule 23." *Id.* at 49. Thus, the Objectors argue, "the court erred in certifying a settlement class which fails to comply with" Rule 23's requirements. *Id.*

But the district court left little analysis by which we can review its determination of the appropriateness of the proposed class. In its preliminary order certifying the class, the district court briefly outlined the contours of the potential class but had only this to say about class certification: "The Court finds, for settlement purposes only, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3), which the Court need not address for purposes of settlement."[6]

---

[6] The language in the district court's preliminary order on class-certification is identical to the language provided by the Plaintiffs and CRE in their proposed order. That proposed language read: "The Court finds, for settlement purposes only, that the

Appellants' App. vol. 2 at 477. And its discussion of the appropriateness of class

certification in the final order wasn't much longer, stating:

> The Court finds, for settlement purposes only, that the Class satisfies the applicable standards for certification under Federal Rules 23(a) and 23(b)(3). Accordingly, solely for purposes of effectuating this Settlement, this Court has certified a class of all Class Members. Because the Rule 23 class is being certified here for settlement purposes only, the Court need not (and does not) address the manageability requirement of Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).[7]

Appellants' App. vol. 7 at 1648. In its analysis, the district court didn't discuss

Rule 23(a)'s requirements of numerosity, commonality, typicality, or fair and

---

requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3), which the Court need not address for purposes of settlement." Appellants' App. vol. 2 at 456.

[7] The language in the district court's class-certification order mirrors the language provided by the Plaintiffs and CRE in their proposed order. That language reads:

> The Court finds, for settlement purposes only, that the Class satisfies the applicable standards for certification under Federal Rules 23(a) and 23(b)(3). Accordingly, solely for purposes of effectuating this Settlement, this Court has certified a class of all Class Members. Because the Rule 23 class is being certified here for settlement purposes only, the Court need not (and does not) address the manageability requirement of Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

Appellants' App. vol. 2 at 462.

The district court's language is identical—containing the same "(and does not)" parenthetical and the *Amchem* citation without a pincite. *Compare id.* (proposed order confirming certification of class action for settlement purposes), *with* Appellants' App. vol. 7 at 1648 (district court order confirming certification of class action for settlement purposes).

adequate representation. Indeed the only mention of any Rule 23 classification comes when the district court explains what criterion it *didn't* consider.

Brevity may be the soul of wit, but it isn't the soul of rigorous analysis. Such a short discussion of class certification is incompatible with the district court's obligation for thorough examination. *See Shook*, 386 F.3d at 972 (reversing a denial of class certification when "[t]he district court erred by not specifically addressing the traditional Rule 23 factors in denying class certification"). And it leaves us without a sufficient record to review. We can't determine whether the district court abused its discretion when the district court didn't explain how or why it exercised its discretion. *Cf. Vallario*, 554 F.3d at 1264 ("*As long as the district court applies the proper Rule 23 standard*, [the Court of Appeals] will defer to its class certification ruling . . . ." (emphasis added)).

As we have cautioned, "the appropriateness of class certification lies at the heart of" class actions. *Integra Realty II*, 354 F.3d at 1261. "Class action settlements are premised upon the validity of the underlying class certification." *Id.*; *see also Falcon*, 457 U.S. at 161 (Class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). Thus we vacate and remand for the district court to more meaningfully explain its bases for class certification.[8]

---

[8] Because we conclude that the district court's analysis regarding class certification was insufficient, we needn't address the Objectors' other challenges to

In doing so, we note that we have taken no position on the appropriateness of the suggested class or the settlement agreement. Rather, we hold only that the district court fell short of its obligation to analyze, independently and rigorously, the proposed class's suitability. *See Shook*, 386 F.3d at 973–74 (remanding when "the district court's order has yet to apply fully the Rule 23 framework" but noting that "[o]n remand, it may well be that the factual and legal concerns" that led to the court's initial decision could again warrant that same decision when analyzed with the correct legal standards); *Mukhia v. Holder*, 507 F. App'x 824, 830 (10th Cir. 2013) (remanding for "further explanation" but "tak[ing] no position" on whether the district court's conclusion was correct).

## CONCLUSION

For the above reasons, we vacate and remand for further proceedings consistent with this order.

<div style="margin-left:50%">

Entered for the Court

Gregory A. Phillips
Circuit Judge

</div>

---

the settlement. Without a class to reference, we can't review whether the settlement is fair.